QUAKER CITY GEAR WORKS, INC.
and Karlheinz Roth,
Appellants/Cross-Appellees,

v.

SKIL CORPORATION,
Appellee/Cross-Appellant.

Appeal Nos. 84–634 and 84–649.

United States Court of Appeals,
Federal Circuit.

Nov. 9, 1984.

As Corrected Nov. 14, 1984.

**1448**

John W. Logan, Jr., Fort Washington, Pa., argued for appellants; with him on the brief was Thomas M. Ferrill, Jr., Fort Washington.

Clarence J. Fleming, Chicago, Ill., argued for appellee; with him on the brief was Robert W. Slater, Chicago, Ill.

Before BENNETT, Circuit Judge, COWEN, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

■ Appeal 84–634 is from the judgment of the United States District Court for the Eastern District of Pennsylvania (Green, J.), entered September 21, 1983, holding invalid U.S. Patent No. 3,247,736, owned by Quaker City Gear Works, Inc. The case was tried to a jury, which returned a special verdict under Rule 49(a), Fed.R.Civ.P.,

1. Exemplary claim 1 reads as follows:
 1. A combination of involute gears in which the shafts of the two gears are parallel to one another and wherein the virtual number of teeth on the pinion is no more than five, comprising the following features:
 (a) Both gears are helical and the helix angle is given by

$$-0.35 z_v \mid 1.4 < \frac{b}{m_n} \sin \beta_0 < 1.5$$

responding to a series of factual and legal questions tending to uphold Quaker City's position that its patent was valid and infringed. The district court, however, directed entry of judgment for Skil Corporation on the basis that the '736 patent failed to comply with the disclosure requirements of § 112 by incorporating by reference "essential material" from an unavailable publication, German Industrial Standard 58400 (draft September 1963). We conclude that this action was correct.

In Appeal No. 84–649, Skil asks for attorney fees under 35 U.S.C. § 285. We are unconvinced that the record provides a basis for finding the case to be "exceptional", as required for an award of attorney fees.

Accordingly, the judgment is affirmed.

*Background*

1. *The Patent*

The patent in suit, entitled "Involute Gear Combinations" and issued April 26, 1966 to Karlheinz Roth, relates to a speed-reduction gear train for the transmission of power in which a pinion with a relatively small number of teeth meshes and drives a parallel gear with a relatively large number of teeth.[1] The invention can be applied in the gearing mechanism for a hand-held power drill, as illustrated below:

wherein $\beta_0$ = helix angle at the pitch cylinder, $m_n$ = module, b = minimum tooth width and $z_v$ = virtual number of teeth;
 (b) the pinion has a small addendum and a large useful dedendum (difference between useful height of tooth and addendum) if it is the driver, or a large addendum and a small useful dedendum if it is the driven, the profiles of the combination being complementary in respect of the tooth sides involved in power transmission;
 (c) there is a profile deviation which is positive for the pinion in a step-down combination but negative in a step-up combination, and positive for the wheel in a step-up combination.

The pinion, or drive gear, labelled 1 in the above figure, has helical teeth which mesh with, and transmit power to, a second helical gear with many more teeth (the "wheel"), labelled 2. The gear curvatures are designed so that the number of teeth on the pinion is kept to a minimum, resulting in gear ratios obtainable in a single gear stage that were previously attainable only in multiple gear stages. The invention is advantageous in substantially lowering the cost of the gear train required for a given speed-reduction ratio.

The patent specification discloses both a single tooth and a double tooth pinion as embodiments of the invention. The specification teaches that, to practice the invention, the disclosed pinion is "preferrably combined" with a helical wheel gear made according to "German Industrial Standard 58400 draft September 1963." The standard, in fact, is mentioned at six locations in the specification as follows:

> Further, in a step-down involute gear combination according to the invention it is preferred to use as the basic profile for the wheel the standard profile for precision work as laid down by *German Industrial Standard No. 58400 (draft September 1963).*

> \* \* \* \* \* \*

The mating profile can be a standard profile, preferably according to *German Industrial Standard 58400 draft September 1963* for the precision industry. . . .

> The standard profile for the precision industry according to *German Industrial Standard No. 58400* is complementary to the basic profile of FIG. 1 . . . . Thus, in the case of the standard profile according to *German Industrial Standard 58400 draft September 1963*, a portion of the dedendum available for power transmission is not used in the gear combination in question.

> \* \* \* \* \* \*

> The pinion of FIG. 4 can likewise be combined with a helical gear made according to *German Industrial Standard 58400 draft September 1963*. The basic profile of FIG. 2 is also complementary to the profile of *German Standard 58400 draft September 1963*. [Emphasis added.]

The standard is also claimed in dependent claim 5, a claim not in issue in the present litigation.

### 2. *The Patent Prosecution*

The Roth application was filed in the U.S. Patent and Trademark Office (PTO) on December 12, 1963. Although the patent issued with a claim for priority based on a German application, filed January 17, 1963, there are significant differences between the two applications, and Quaker City no longer relies on the earlier date.

The U.S. application received a first action allowance by the PTO examiner, with no questions raised as to the six references in the specification to the 58400 German Standard, despite the fact that the Standard was claimed in claim 5.

The Office Action allowing the application was sent to Roth's German patent agent by the U.S. patent attorney handling the prosecution. In a letter dated June 22, 1965, acknowledging receipt of the Office Action, the German patent agent wrote the U.S. attorney, querying:

In the English documents of the application, reference is made on several pages and also in claim 5 to the DIN Standard (German Industrial Standard) 58400 and also (on page 6, 1) to DIN 867. We ask you to check whether this reference to German standards can be retained or whether it is necessary to carry out a substitution by American standards or by a literal description before the granting.

The U.S. attorney responded:

In connection with the reference to the German Industrial Standards appearing in the specification and Claim 5, *assuming that these Standards are available to the public in printed form*, we see no reason why it would be necessary to replace them in the specification by a reference to a corresponding United States Industrial Standard or by a more complete structural description. With respect to the use of this terminology in Claim 5, the situation is not quite so clear, but in our opinion, we believe that claim should be allowed to remain in its original form. We must point out that the use of this type of terminology in a claim is quite irregular by U.S. claim writing standards, and we are somewhat surprised that the Examiner did not object thereto. However, it is also true that some U.S. Examiners will allow considerable latitude in claiming an invention providing that the way in which the invention is claimed is not clearly contrary to established procedures. We believe that the Examiner could find no concrete reason for objecting to Claim 5 and, thus, he is prepared to allow it in its present form. *While we would have preferred to write a more exact description of the structure involved,* in view of the fact that the claim has been allowed and the Examiner has closed out prosecution on merits and, further, in view of the fact that Claim 5 is a depend-

ent claim, we would suggest that this claim be allowed to remain as it presently is. We would suggest, however, that in any future cases where a similar situation is present that a more complete structural definition of the invention be given, particularly in the claims. We think that the present application involves a unique situation in which the Examiner has gone much farther than is customary in allowing us to claim the invention in this fashion, and we think that it would be highly doubtful that this would be repeated in another case. [Emphasis added.]

The U.S. application was thus issued without a description of the German Standard or a reference to any corresponding U.S. Standard.

## 3. District Court Proceedings

Quaker City instituted a patent infringement suit against Skil in the United States District Court for the Eastern District of Pennsylvania. Despite repeated discovery requests by Skil, Quaker City was unable to produce a copy of the referenced September 1963 draft of German Industrial Standard 58400.

The case was tried to a seven member jury over a two week period. The jury heard conflicting testimony concerning, *inter alia,* the adequacy of the patent disclosure to enable one of ordinary skill in the art to make and use the invention under 35 U.S.C. § 112, first paragraph.[2] At one point, while being questioned on the related German priority application, the inventor, Roth, testified that the referenced German Standard was "necessary" to design the wheel of the invention.

At the conclusion of the trial, the jury was asked to return a special verdict in the form of answers to 22 interrogatories. In accordance with Judge Green's instructions, the jury did not answer questions on

**2.** 35 U.S.C. § 112 provides, in pertinent part:
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

which they could not unanimously agree. The jury found that the scope and content of the prior art did not include any of nine references put into evidence by defendant, that the references were not more pertinent than art considered by the examiner, that the invention would not have been obvious from various combinations of the above references, that the patentee did not withhold pertinent prior art, that the claims distinctly claimed the invention, did not cover inoperable combinations of gears, did not attempt to patent a mathematical expression or merely a desired result, did cover an arbitrary range, and did not contain an incorrect formula. Finally, the jury found that Skil willfully infringed. The jury could not agree on whether the person of ordinary skill in the art had a high school or college education.

With respect to enablement, the specific interrogatories, and the answers provided by the jury, read as follows:

### Interrogatory #11

Does the specification of the Roth patent, that is, the portion of the patent in Columns 1, 2, 3, 4 and the first four lines of Column 5, contain a written description, including its drawings and text, *of the alleged invention* in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is more nearly connected, to make and use the same?

Yes __X__ No ___

### Interrogatory #12

Does the specification of the Roth patent, that is, the portion of the patent in Columns 1, 2, 3, 4 and the first four lines of Column 5, contain a written description, including its drawing and text, *of the manner and process for making and using the alleged invention* in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same?

Yes ___ No ___

As indicated directly above, the jury could not agree on an answer to Interrogatory No. 12.

The jury's answers were recorded and the jury was released, subject to later recall, after which the parties were given the opportunity to file relevant motions. Quaker City moved for entry of an order in its favor on liability and for a trial with respect to damages. Skil moved for judgment in its favor under Rule 50(b), Fed.R. Civ.P.,[3] or for a new trial.

The district court granted Skil's motion solely on the basis that the patent was invalid for failing to comply with the disclosure requirements of 35 U.S.C. § 112. The court based its decision on its finding that the German Standard constituted "essential material," noting, "No interrogatory was requested or submitted to the jury concerning whether the German Standard was essential material," and that, therefore, under Rule 49(a), Fed.R.Civ.P.,[4] the

---

3. Rule 50(b) provides:
 (b) *Motion for Judgment Notwithstanding the Verdict.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion

for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

4. Rule 49(a) provides:
 (a) *Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may

court was free to make that finding. In making its determination the court stated:

> In light of all the evidence, particularly Prof. Roth's testimony that the German Standard was "necessary" to design the wheel used in a related German patent, I find that the German Standard was "essential material" for the design of the Patent at issue here as well.

The court then held that, under the guidelines set forth in *General Electric Co. v. Brenner*, 407 F.2d 1258, 1262, 159 USPQ 335, 338 (D.C.Cir.1968) and the Manual of Patent Examining Procedure, § 608.-01(p)(B), reference to an unavailable non-patent foreign publication was clearly insufficient for compliance with § 112.

The court ruled in the alternative that Skil was not entitled to relief on the ground that the jury's answers were inconsistent, although the court did note that "the jury's answers do not appear entirely consistent" and that "[m]ost notably, the jury's failure to find that any of the references listed in Interrogatory #1 were prior art seems inconsistent with the evidence of both parties." The court was also not concerned over the jury's failure to agree on an answer to Interrogatory #12, since in the court's view, "when one reviews the jury's answers to the twenty-two interrogatories as a whole, they are sufficiently consistent to indicate the jury's intent to return a verdict for the plaintiff." Finally, with respect to Skil's complaint that the technical nature of the evidence was beyond the jury's ability to understand, and that, therefore, under *In re Japanese Electronic Products Antitrust Lit.*, 631 F.2d 1069 (3rd Cir.1980), the case should not have

been tried before a jury, Judge Green ruled that the subject matter was no more technical than a typical patent case, and that Skil has not been deprived of due process.

Quaker City subsequently filed a motion asking that the judgment be vacated, which was denied by Judge Green on the basis that the motion raised no issues that had not previously been considered.

With respect to Skil's request for attorney fees, which it made in its pleadings and its post-trial proposed conclusions of law, no specific ruling was made on the matter. The judgment simply contains no award.

## OPINION

### I.

█ When a special verdict is sought from a jury, the appropriate procedure is for the court to accept the findings of fact explicitly made or implicit in the jury's answers and, based thereon and on such additional findings as the court may find necessary to make (Rule 49(a)), direct entry of judgment under Rule 58, Fed.R.Civ.P. In this case, there was some uncertainty concerning how to deal with the jury's special verdict even though it was largely in Quaker City's favor, because all of the questions were not answered and because some of the answers, particularly the answer to Interrogatory 1 rejecting all proffered references from consideration as prior art, indicated a lack of comprehension of the issues. Because of its uncertain status as a "verdict",[5] Skil filed a motion for judgment under Rule 50(b) purportedly on the theory that "no verdict was returned." *See* Rule

submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each

party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. *As to an issue omitted without such demand the court may make a finding;* or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict. [Emphasis added.]

5. Adding to the uncertainty, the court specifically said there was no verdict, but merely answers to interrogatories. Undoubtedly, the court meant there was no general verdict for a party.

50(b), *supra* note 3, last sentence. The court, however, termed and treated this motion as a 50(b) motion for judgment notwithstanding the verdict.

As an initial matter, with respect to terminology, Rule 49(a) speaks of "a special verdict in the form of a special written finding upon each issue of fact." Thus, the compilation of findings is "a special verdict." The rule contemplates that only factual questions will be submitted to the jury to which the judge will then apply the law, supplementing, if necessary, any factual determinations not submitted to the jury. 5A *Moore's Federal Practice*, § 49.-02, at 49–8 (2d ed. 1984). Where a special verdict does not contain one or more answers requested, it may, unless wholly defective, be accepted for those issues that are resolved. It is "a special verdict" to the extent findings are made (assuming the findings are not contradictory). Wright and Miller, *Federal Practice and Procedure: Civil*, § 2510, at 520 (1971). A party may request reconsideration by the jury of unresolved factual issues in such case, or may be entitled to a retrial of those issues.[6] However, the right to trial by jury of any factual issue may be waived, for example, by agreeing to instructions that the jury need not answer all questions, and the court is empowered to complete the findings, apply the law, and direct entry of judgment. Thus, in this case, when the court determined that the answers given were reconcilable, the "special verdict" should have been promptly recorded as such.

In any event, based on the answers, Quaker City correctly sought entry of a judgment in its favor as provided in Rule 58, Fed.F.Civ.P.[7] The answers, on the other hand, did not support Skil's position that the patent was invalid and not infringed. Therefore, Skil should have filed a Rule 50(b) motion for judgment notwithstanding *the verdict* since it wished to challenge the sufficiency of the evidence supporting particular findings of the jury.

Finally, while "a specific verdict" seeks resolution of only *factual* issues under a precise reading of Rule 49(a), this court has not found error where a legal question has been included. Rather, since the answer to the legal question necessarily resolves any disputed underlying factual issues, we have undertaken to review the factual findings on which the legal conclusion is based, applying the substantial evidence standard. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1550, 220 USPQ 193, 199 (Fed.Cir. 1983).

Turning to the action taken by the court here, we do not agree that the court was free to make a specific finding under Rule 49(a) which *overruled* an implicit and inherent finding of the jury within a broader question. Rather, the court had to accept the jury's determination and could set it aside only if it were not supported by substantial evidence. However, this procedural irregularity did not affect the result here.

### Inadequate Disclosure

The question of whether the disclosure of a patent satisfies the enablement requirement of § 112, first paragraph, is a question of law. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 960, 220 USPQ 592, 599 n. 6 (Fed.Cir.1983). However, that is-

---

**6.** See Brown, *Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338, 347–48 (1967) in which when C.J. Brown (5th Circuit) points out how a trial judge or an appellate court may save the "good" part of a first trial. *See also* Sunderland *Verdicts, General and Special,* 29 Yale L.J. 253 (1920); 5A *Moore's Federal Practice*, § 49.02, at 49–6 (2d ed. 1984).

**7.** Rule 58 provides, in pertinent part:
 Subject to the provisions of Rule 54(b): (1) upon a general verdict of a jury, or upon a decision by the court that a party shall recov-

er only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it.

sue may involve subsidiary questions of fact or of law. In this case, we are faced with both types of underlying questions. The first, whether the German Standard is necessary for an adequate disclosure, is a factual question; the second, whether it could be incorporated by reference, is a legal question.

Quaker City argues that the jury was aware of the argument and conflicting evidence over whether or not the unavailable German Standard was critical to enablement and presumably decided the matter in Quaker City's favor. Quaker City particularly points to the testimony of its witnesses, Drago and Berlinger, as providing the requisite "substantial evidence" in support of the answer.

Drago, a consultant for Quaker City in connection with gearing made in accordance with the Roth patent, testified as follows:

> Q. Mr. Drago, we've heard witnesses testify as to the inability to understand the Roth patent. Have you ever had any difficulty in understanding the Roth patent?
> A. No, sir.
> Q. Have you ever had any difficulty in determining how to make a gear combination following the teachings of the Roth patent?
> A. No, sir.
> Q. Have you ever made any such combinations?
> A. Yes.
> Q. Well, let's change that. Have you ever designed any such combinations?
> A. Yes.
> Q. Have they been made?
> A. Yes.

Berlinger, a mechanical engineer for Quaker City, testified to the following:

> Q. Do you find in that patent a teaching of how to make a gear combination including a pinion and a gear?
> A. Yes.

> Q. Have you, by you, I mean you and Quaker City Gear Works, made gear combinations including a pinion and a gear in accordance with the teachings that you got from the Roth Patent?
> A. Yes.
> Q. Are the models of Exhibits 30, 31 and 32 made in accordance with the teaching of the Roth Patent?

> \* \* \* \* \* \*

> THE WITNESS: Yes.

Quaker City's argument is that if the jury found the above testimony to be believable—and, according to Quaker City, the jury's answer to Interrogatory 11 indicates that it did—then the district court *must accept* the jury's answer that the patent disclosure satisfies the requirements of 35 U.S.C. § 112, first paragraph.[8]

Under Quaker City's view, we would look *only* to evidence in its favor to determine whether "substantial evidence" supports the implicit factual finding that the German Standard was not "essential material." The law is clearly to the contrary.

In *Connell v. Sears*, 722 F.2d at 1546, 220 USPQ at 197, this court set forth the standard governing the granting or denial of a motion JNOV under Rule 50(b) as follows:

> To govern consideration of motions for a directed verdict and for judgment notwithstanding the verdict, guidelines consistent with the Seventh Amendment and the cited Rules have been set forth in the cases. [Citations omitted.]

> Under these guidelines, a court must: (1) *consider all the evidence;* (2) in a light most favorable to the non-mover; (3) drawing reasonable inferences favorable to the non-mover; (4) without determining credibility of witnesses, and (5) without substituting its choice for that of the jury between conflicting elements in the evidence. The court should not be guided by its view of which side has the

---

8. We will assume that Interrogatory 11 is a complete determination with respect to § 112 requirements, despite the failure of the jury to answer Interrogatory 12, which appears to be more precisely directed to enablement.

better case or by what it would have done had it been serving on the jury. *If, after following those guidelines, the court is convinced upon the record before the jury that reasonable persons could not reach or could not have reached a verdict for the non-mover, it should grant the motion for directed verdict or for JNOV.* [Emphasis added.] *Cf. Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Thus, the substantial evidence standard requires a review of *all* of the evidence, in accordance with the above guidelines, in assessing whether the jury's presumed finding was reasonable.[9]

 If we assume the jury wholly discredited the testimony of Skil's experts that the disclosure was not enabling, we must, nevertheless, as the trial court did, take into account the admission by the inventor Roth that German Standard 58400 was necessary to design the wheel. Quaker City attempts to discount this admission on the basis that Roth was being interrogated on the corresponding German application, rather than the U.S. patent application. Skil counters with the explanation that the German application was used only as means for facilitating the cross-examination of Roth, which it contends was cumbersome at best, since it had to be conducted through a translator. Quaker City additionally discounts Roth's admission because he did not specifically refer to the "September 1963 draft." However, without question, Roth admitted that some standard was necessary, and the patent itself specifically identifies that material as a particular draft. In sum, Roth's testimony concerning the necessity of the standard negates the reasonableness of a conclusion that the standard was not essential for an adequate disclosure.

Quaker City's next set of contentions is that "all data of any significance from DIN 58400 are reproduced directly in the U.S. patent in suit," and that, in any event, the "well established German standards specifications closely parallel and are nearly identical to their U.S. counterpart," i.e., AGMA specification 207.06, entitled "AGMA Standard System Tooth Proportions for Fine-Pitch Involute Spur and Helical Gear." Both these arguments must fail since the unavailability of the September 1963 DIN 58400 draft makes it impossible to confirm the assertions. Moreover, the concern expressed in the correspondence between Quaker City's German patent agent and U.S. attorney in 1965 convincingly negates Quaker City's position that the information is incorporated in the patent.

Finally, Quaker City challenges the district court's purported holding that "essential material" in a foreign document may not be incorporated by reference. Judge Green did note that the Manual of Patent Examining Procedure § 608.01(p)(B) restricts the incorporation by reference of "essential material" to that found in (1) a U.S. patent or (2) an allowed U.S. patent application.[10]

Quaker City's argument is that the above referenced section was added to the MPEP *after* the pendency period of the Roth patent application. Skil's counter argument is that 35 U.S.C. § 112, first paragraph, has always required an adequate disclosure.

 The restriction on incorporation by reference set forth in § 608.01(p)(B) is immaterial to resolution of a case such as the present one, where an *unavailable* reference has been incorporated by reference. Incorporation by reference has never been permissible under 35 U.S.C. § 112 of material necessary for an adequate disclosure which is unavailable to the public.

 Since we affirm the judgment on the basis of lack of enablement, we will not address in detail the other grounds of

---

9. *See* Cooper, *Directions for Directed Verdicts: A Compass for the Courts*, 55 Minn.L.R. 903, 927–953 (1971).

10. "Essential material" is defined as "that which is necessary to (1) support the claims, or (2) for adequate disclosure of the invention (35 U.S.C. § 112)." M.P.E.P. § 608.01(p)(B), at 600–35 (1983).

invalidity raised by Skil. However, a number of errors appear from our review of the record. The court's instruction on a weaker or stronger presumption of validity and a different burden of proof depending on whether the PTO reviewed the best prior art is not in accordance with the precedent of this court. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 771 (Fed.Cir.1984). The question of whether the cited references were prior art should not have been submitted to the jury nor instructions given, since it was undisputed that they were. *Structural Rubber Products Co. v. Park Rubber Co.*, 749 F.2d 707, 717 (Fed.Cir. 1984); *Nestier Corp. v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576, 1579, 222 USPQ 747, 750 (Fed.Cir.1984). Further, the court's instruction on obviousness suggests that the jury should decide whether a person of ordinary skill would actually know of the prior art references, a clear error of law. *Kimberly-Clark Corp. v. Johnson & Johnson and Personal Products Co.*, 745 F.2d 1437, 1449–1454, 223 U.S.P.Q. 603, 610–14 (Fed.Cir.1984). Understandably, the jury could have concluded that one of ordinary skill in the art would be ignorant of references written in German and Japanese.

 Finally, the court stated that it was using Rule 49(a) to resolve factual issues only, apparently believing that the legal issues of enablement and obviousness were issues of fact. While it is not error to submit these issues to the jury if the trial judge wishes to do so, the instructions must identify in some clear manner what underlying factual issues the jury is expected to resolve. See *Structual Rubber*, at 720–22; *Moore's, supra*, § 49.03[3] at 49–20 to 49–22.

## II.

### Attorney Fees

 The basis for Skil's argument that this case is "exceptional" within the mean-

ing of 35 U.S.C. § 285 is that Quaker City breached its duty of candor to the U.S. Patent and Trademark Office by failing to disclose certain publications (the 1956 AGMA Standard 207.4 and the 1961 Thoen paper) to the examiner. While lack of candor or "fraud" can form a basis for an "exceptional case," we note that the jury, in answering Interrogatory # 5, specifically found that Quaker City had *not intentionally* failed to call these references to the attention of the U.S. Patent and Trademark Office. The difficulty with relying on this answer is that the jury erroneously held the references not to be prior art at all in Interrogatory No. 1.[11] In any event, in the interests of judicial economy, we have considered the record as a whole and ascertain no basis that would justify an award of attorney fees. Accordingly, we do not remand for the trial court to reconsider this matter.

### Conclusion

In Appeal No. 84–634, we conclude the district court correctly granted Skil's motion for JNOV. In Appeal No. 84–649, we conclude that Skil is not entitled to attorney fees. Accordingly, the judgment is *affirmed.*

*AFFIRMED.*

---

11. While a jury's fact findings common to a legal claim and an equitable defense are to be accepted by the court in ruling on the equitable matter, *Beacon Theatres v. Westover*, 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1958), resolution by the jury of equitable issues is questioned. *See In re Yarn Processing Patent Validity Litigation*, 472 F.Supp. 170, 173, 205 USPQ 758, 761 (S.D.Fla.1979) (no right to jury trial on wholly equitable issues).