BAXTER HEALTHCARE CORPORA-
TION and Utah Medical Products,
Inc., Plaintiffs–Appellants,

v.

SPECTRAMED, INC., Defendant/Cross–
Appellant.

Nos. 93–1284, 93–1302.

United States Court of Appeals,
Federal Circuit.

March 17, 1995.

H. Ross Workman, Workman, Nydegger & Jensen, Salt Lake City, UT, argued, for plaintiffs-appellants. With him on the brief were Larry R. Laycock and Todd E. Zenger. Also on the brief was Debra D. Condino, Baxter Healthcare Corp.

James W. Geriak, Lyon & Lyon, Costa Mesa, CA, argued, for defendant/cross-appellant. With him on the brief was Kurt T. Mulville. Also on the brief were Allan W. Jansen, Lyon & Lyon, Los Angeles, CA, Steven D. Hemminger, Lyon & Lyon, San Jose, CA, and Larry R. Cassett and Roger M. Rothbun, BOC Group, Inc., Murray Hill, New Providence, NJ.

Before MICHEL and PLAGER, Circuit Judges, and MESKILL, Senior Circuit Judge.[1]

PLAGER, Circuit Judge.

This is a patent infringement case. In addition to deciding the merits of the judgment rendered by the trial court, we must also examine the question of a trial court's options when a jury decides some, but not all, of the special interrogatories submitted to it. Both parties object to the trial court's disposition of the issues.

Plaintiffs Utah Medical Products, Inc. and Baxter Healthcare Corporation (hereafter collectively "Baxter") appeal, and defendant Spectramed, Inc. ("Spectramed") cross-appeals the March 3, 1993 judgment of the United States District Court for the Central District of California in Civil Action 89–0131. The district court entered judgment for plaintiff Baxter on the issues of inequitable conduct and certain issues of validity regarding U.S. Patent No. 4,610,256 (the '256 patent), but granted Spectramed's post-trial motions for judgment as a matter of law (JMOL) on all issues of infringement.

## BACKGROUND

The subject matter of this suit is a blood pressure transducer which is part of a system that continually and directly monitors a patient's blood pressure. In this monitoring system a catheter, placed inside a patient's blood vessel, transmits periodic pressure pulses through a fluid-filled tube in the catheter to a pressure transducer. A thin diaphragm in the pressure transducer deflects to a degree proportionate to the pressure of the pulses through the fluid. The transducer converts the strength of the pulse into a corresponding electrical signal, and transmits this signal through electrical cabling to a monitor, thus allowing continual measurement of the patient's blood pressure.

The accuracy of the measurements in a direct monitoring system is highly dependent on the transducer; a method of calibration is necessary to ensure that the transducer is functioning properly. Historically, calibration was performed by connecting a known pressure source to the transducer's diaphragm via a special port in the transducer, on the same side of the instrument as the connection for the patient's catheter (patient side calibration). The pressure exerted by this source against the fluid in the chamber adjacent to the diaphragm causes the diaphragm to deflect. If the measurement on the monitor differs from the known pressure source, appropriate adjustments are made to the monitor.

This method of calibration is not without some risk to the patient. Although a stopcock shuts off direct contact with the patient during calibration, the known pressure source does come into contact with the same side of the diaphragm as the tube leading to the patient while monitoring blood pressure. This introduces the risk of contaminants entering the patient's bloodstream once the stopcock is released. Moreover, should the person calibrating the transducer fail to close off the connection to the patient, air bubbles could directly enter into the patient's bloodstream, possibly leading to an air embolism.

---

[1]. Honorable Thomas J. Meskill, Senior Circuit Judge, U.S. Court of Appeals for the Second Circuit, sitting by designation.

## A. The '256 Patent

On September 25, 1984, Dr. William D. Wallace, a physician at Utah Medical, filed a patent application for an apparatus and method for calibrating transducers in a different manner.[2] Instead of introducing a positive pressure on the patient's side of the transducer, with its corresponding risks, Dr. Wallace's invention avoids contact with the patient's side of the transducer diaphragm by providing a negative or vacuum pressure to be drawn on the backside of the diaphragm (backside calibration). Since the transducer is a differential device and typically balanced to zero pressure, a negative pressure on the backside of the diaphragm will result in the same pressure reading on the monitor as an equal and opposite positive pressure on the front side of the transducer. This known negative pressure deflects the diaphragm which then triggers the previously-mentioned conversion into an electrical signal. On September 9, 1986 this application issued as U.S. Patent No. 4,610,256 (the '256 patent) with Claim 1, which is illustrative of the '256 patent, reading:

> 1. In a direct blood pressure monitoring system including an indwelling catheter and pressure tubing filled with a fluid for communicating blood pressure pulses to a diaphragm of a pressure transducer, and a monitor for displaying data corresponding to said blood pressure pulses, an apparatus comprising means for placing one side of said diaphragm in communication with said blood pressure pulses in said pressure tub-

ing and catheter, means for venting the other side of said diaphragm to atmospheric pressure, and means for introducing a calibration pressure on the side of said diaphragm that is vented.

On May 27, 1987 the Patent and Trademark Office (PTO) granted Spectramed's request for reexamination of the '256 patent in light of a newly discovered piece of prior art—a published article entitled *"A Calibration System for Catheter Transducer Pressure Measurement," Biomedical Engineering,* May 1976, at 180–82, by R.H.S. Murray and N.A. Howe (hereafter Murray/Howe). Unlike other cited prior art references, this reference taught, *inter alia,* a means for calibrating on the backside of a transducer diaphragm. The patentee, in his response, argued that although this reference taught backside calibration of a transducer, it did so in a way different from that claimed by the '256 patent. Specifically, the Murray/Howe reference taught backside calibration by physically modifying the transducer, whereas the '256 patented invention utilized a cable both for introducing pressure to the backside of the transducer as well as for transmitting the electrical signal to the monitor. According to the patentee, the use of this cable was neither disclosed nor contemplated in the Murray/Howe reference.[3] In light of this distinction the patentee amended his claims.[4] Based on this reasoning the examiner allowed the claims as amended, and a Reexamination Certificate issued on June 21, 1988.

2. Dr. Wallace's patent application rights were assigned to his employer, Utah Medical, who later granted a license to Baxter, co-plaintiff in this suit.

3. One of the authors of the Murray/Howe reference stated in a written declaration that, at the time the article was written, he was unsuccessful in developing and utilizing a cable similar to that claimed in the '256 patent—one that allowed placing a venting tube into the electrical cable thereby facilitating backside calibration.

4. The patentee amended original Claims 1, 13, and 42, and added new claims 43 and 44. Illustrative of the amendments made is Claim 1 with the sections within the brackets being the matter that was deleted and the matter printed in italics indicating the additions made to the claim during reexamination:

> 1. In a direct blood pressure monitoring system including an indwelling catheter and pressure tubing filled with a fluid for communicating blood pressure pulses to a diaphragm of a pressure transducer, and a monitor for displaying data corresponding to said blood pressure pulses, an apparatus comprising means for placing one side of said diaphragm in communication with said blood pressure pulses in said pressure tubing and catheter, means for venting the other side of said diaphragm to atmospheric pressure, and **[means]** *a first cable comprising means for electrically connecting said transducer diaphragm to said monitor and said first cable further comprising means* for introducing a calibration pressure on the side of said diaphragm that is vented.

## B. Defendant's Products

The defendant in this action, Spectramed, began selling its DTX line of transducers as early as May 1983. This device and its accompanying white cable, discussed *infra*, were on sale in this country more than one year prior to the filing date of the '256 patent, and therefore are prior art under 35 U.S.C. § 102(b). The device consisted of a transducer housing with an attached cable (referred to hereafter as a "pigtail" cable) having both electrical wiring and a vent passage for venting the backside of the transducer diaphragm. The other end of the pigtail cable, i.e., the side not connected directly to the transducer housing, was attached to an electrical connector. Along with this transducer Spectramed sold a corresponding white cable which served essentially as an extension cord from the electrical connector on the pigtail cable to a monitor for reading the blood pressure (referred to hereinafter as "white cable"). This product—DTX with white cable—was not designed or equipped to perform backside calibration.

In 1985, after the commercial embodiment of the '256 patented invention was put on the market, Spectramed modified its white cable. Specifically, Spectramed altered the female connector on the white cable, which attaches to the electrical connector on the transducer's pigtail cable, by designing an O-ring to fit around the female connector for the purpose of sealing the connection, and inserting a tube through the central portion of the female connector venting six or eight inches down the cable. The resulting product—the gray cable—when used with the unmodified prior art DTX transducer was capable of performing backside calibration.

Utah Medical, believing that Spectramed's new product infringed their '256 patent, invited Spectramed to enter into a licensing agreement both prior and subsequent to issuance of the '256 patent. Spectramed declined, and instead filed the previously discussed request for reexamination of the '256 patent. In July 1989, shortly after the Reexamination Certificate issued, Utah Medical and Baxter Healthcare Corporation, which had obtained a license for the '256 patent, filed suit against Spectramed alleging that Spectramed's various transducer models—the DTX, DTX Plus, P10EZ, and P23XL models—infringed the '256 patent.

## C. District Court Proceedings

The trial, which commenced on September 29, 1992, was tried before an eight-member jury in the United States District Court for the Central District of California. At the close of evidence, the jury was instructed to answer fourteen separate Special Jury Interrogatories pursuant to Federal Rule of Civil Procedure (FRCP) 49(a).[5] On February 19, 1993, the jury returned with unanimous decisions in favor of plaintiff Baxter on twelve of the fourteen interrogatories. In particular, the jury unanimously found that the '256 patent was enforceable and infringed by Spectramed's products.[6] The jury, however, deadlocked on Special Interrogatories 9 and 11. Special Interrogatory 9 pertains to whether the '256 patent is anticipated under 35 U.S.C. § 102(a).[7] Special Interrogatory 11 addresses the ultimate issue of obviousness under 35 U.S.C. § 103.[8] In response,

---

5. Prior to submitting the special interrogatories to the jury the trial court denied Spectramed's renewed motions for judgment as a matter of law (JMOL) which were filed pursuant to FRCP 50(a)(2).

6. On the infringement issue the jury unanimously found that: (1) Spectramed's accused products (each one of them) infringed, either literally or under the doctrine of equivalents, every asserted claim (Claims 1, 2, 13, 14, 17, 18, 21, and 44) of the '256 patent; (2) Spectramed had induced infringement of all the asserted claims of the '256 patent; and (3) the infringement was willful.

7. Special Interrogatory 9 reads:

9. Do you find that defendant Spectramed, Inc., has proven by clear and convincing evidence that the claims of the Wallace '256 patent listed below are invalid and that Spectramed is therefore not liable for infringement because Arnold Lee, and/or employees of Spectramed:

(1) conceived and successfully reduced to practice an operable apparatus which contained each and every element of any of the asserted claims; and

(2) the apparatus was placed in public use or publicly known prior to September 25, 1984?

8. Special Interrogatory 11 reads:

11. Has defendant Spectramed, Inc., proven by clear and convincing evidence that the assert-

the trial judge, in the presence of the jury, stated:

> And at this time, I find that there is legal necessity to declare a mistrial with respect to this matter for lack of unanimity with respect to the interrogatories that we have identified.

After the jury had been dismissed the parties filed various motions. Baxter moved pursuant to FRCP 58 that the court enter judgment on the special verdict (i.e., the unanimously answered special interrogatories). In addition, Baxter moved for entry of judgment regarding Special Interrogatories 9 and 11.[9] Spectramed, believing that no verdict was returned in light of the declared mistrial, timely moved under FRCP 50(b) for JMOL that (1) Spectramed's devices do not infringe, either literally or under the doctrine of equivalents, the '256 patent; (2) Spectramed did not induce infringement of the '256 patent; (3) the '256 patent is invalid; and (4) the '256 patent is unenforceable. In the alternative, Spectramed moved for a new trial pursuant to either FRCP 50(b) or FRCP 59.

The trial court thereafter granted plaintiff Baxter's FRCP 58 motion for the entry of judgment in its favor based on the jury's findings regarding certain of the special interrogatories,[10] but denied the motion as to the remaining interrogatories. The court also granted JMOL in favor of Baxter that Spectramed had failed to establish inequitable conduct.

However, the trial court granted defendant Spectramed's FRCP 50(b) motions on all issues of infringement (i.e. entered judgment as a matter of law that Spectramed neither directly infringed nor induced infringement of the '256 patent). The trial court explicitly declined to enter any judgment on Special Interrogatories 9 and 11. As a result, the trial court's judgment was inconclusive on the issue of validity, but in light of the decision regarding non-infringement, the trial court entered final judgment for Spectramed on March 3, 1993.

On appeal, Baxter challenges the grant of JMOL that Spectramed neither directly infringed nor induced infringement of the '256 patent and the trial court's refusal to enter judgment in their favor on the subject matter of Special Interrogatories 9 and 11. Spectramed cross-appeals the entry of judgment pursuant to FRCP 58 in favor of Baxter on some of the jury's answers to the special interrogatories (Special Interrogatories 8, 10, and 12–14); the trial court's denial of Spectramed's motion for JMOL that the '256 patent was unenforceable and the grant of JMOL for Baxter that the '256 patent was not unenforceable; and the trial court's refusal to rule on Spectramed's FRCP 50(b) motions concerning the subject matter of Special Interrogatories 9 and 11.[11]

## DISCUSSION

### A.

■ Initially, we note that when a jury, which is charged with returning special inter-

---

ed claims are invalid, and that Spectramed is therefore not liable for infringement because differences between the subject matter of the asserted claims and the prior art are such that the subject matter of the asserted claims, as a whole, would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art of blood pressure transducer calibration technology?

9. Although Baxter did not state the rule under which this motion was brought, the district court treated this as a FRCP 58 motion for the entry of judgment. Baxter does not dispute this characterization on appeal.

10. Special interrogatories 8, 10, 12, 13, 14. These interrogatories related to anticipation under 35 U.S.C. § 102(g) (Special Interrogatory 8), anticipation of Claims 1 and 44 based on prior

art submitted by Spectramed (Special Interrogatory 10), compliance with 35 U.S.C. § 112 ¶ 2 (Special Interrogatory 12), unenforceability due to inequitable conduct (Special Interrogatory 13), and compliance with the best mode requirement of 35 U.S.C. § 112 ¶ 1 (Special Interrogatory 14).

11. In its brief, Spectramed states that if the court affirms all of the district court's rulings which were in favor of Spectramed, then we only need to consider the issues raised by its cross-appeal with regard to inequitable conduct. Accordingly, the scope of the cross-appeal is dependent on our review of the trial court's decision to enter JMOL in favor of Spectramed on the issue of infringement.

rogatories pursuant to FRCP 49(a), fails to unanimously agree on some of the answers, as was the case for two of the fourteen special interrogatories in this case, a trial judge has available several different procedural actions prior to dismissing the jury. First, the trial judge could simply resubmit the issues to the jury for further deliberations in hope of obtaining a unanimous verdict. *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1453, 223 USPQ 1161, 1165 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985); *Turchio v. D/S A/S Den Norske Africa*, 509 F.2d 101, 105 (2d Cir.1974); *see also* James W. Moore et al., Moore's Federal Practice ¶ 49.36–37 (2d ed. 1993) (stating that issues submitted, but not decided by jury, should be resubmitted if jury has not already been dismissed).

Second, the trial judge could ask the parties if they would be willing to forego the requirement of unanimity and accept a majority verdict. *See* Fed.R.Civ.P. 48 (verdicts are to be unanimous unless the parties otherwise stipulate). Third, the trial judge could enter judgment on the basis of the unanimous verdicts if they are dispositive of the case. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1555, 10 USPQ2d 1201, 1208 (Fed.Cir.1989); *see, e.g., Skyway Aviation Corp. v. Minneapolis, Northfield & S. Ry.*, 326 F.2d 701 (8th Cir.1964) (entering judgment in favor of plaintiff in a negligence suit was appropriate despite fact that jury could not unanimously agree whether plaintiff was contributorily negligent because the jury found that even if plaintiff was contributorily negligent this negligence was not the proximate cause of the accident).

Fourth, the trial judge could declare the entire case a mistrial and order the case reheard in its entirety with a different jury. *Franki Found. Co. v. Alger–Rau & Assoc., Inc.*, 513 F.2d 581, 585 (3d Cir.1975). Finally, the trial judge could, in certain situations, order a partial retrial only as to those issues which were not unanimously agreed upon by the jury. James W. Moore et al., Moore's Federal Practice ¶ 49.37 (2d ed. 1993) (stating that if a jury fails to answer a special interrogatory a new trial, at least as to that

issue, should be granted); *see also Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499, 51 S.Ct. 513, 514, 75 L.Ed. 1188 (1931) (Seventh Amendment does not require that a correctly determined issue be retried a second time even though justice demands that another distinct issue must be retried).

It should be noted that this is not a case in which the court omitted, and the parties failed to demand, to have submitted to the jury certain issues of fact, thereby waiving the right to a jury trial on these issues. *See Franki Found. Co.*, 513 F.2d at 587; *see also In re Randall*, 712 F.2d 1275 (8th Cir.1983) (under FRCP 49(a) a party waives its right to a jury trial of an issue only if it was omitted from the original submission to the jury). Rather, the unanswered issues in this case were submitted to the jury in the form of Special Interrogatories 9 and 11. Therefore, to the extent that Special Interrogatories 9 and 11 involve factual determinations, these could not have been decided by the trial judge pursuant to FRCP 49(a).

▪ In this case the trial court dismissed the jury without electing any of the above-mentioned options. Instead, the judge disposed of the case by ruling on the parties' numerous post-verdict motions. Prior to discussing these rulings, however, we must first resolve a threshold issue, namely the effect of the judge's statements, in the presence of the jury, that "there is a legal necessity to declare a mistrial with respect to this matter...."

Spectramed argues that this declaration nullified all of the jury's answers to the special interrogatories, thereby disempowering the trial court from entering judgment based on the jury's answers. We disagree. Although the district court unquestionably had the authority to declare a mistrial and order a new trial, there was no mention of a mistrial (or new trial) in the final judgment. Instead the district court disposed of the case by ruling on the parties' motions. We therefore conclude that the above-mentioned statement was merely a statement of intent post-trial of the district court, which, on more deliberate consideration, was not acted upon. *See Wahpeton Canvas Co.*, 870 F.2d at 1555 n. 17, 10 USPQ2d at 1210 n. 17. According-

ly, the trial judge's statement had no legal effect on the special verdict. *See Quaker City,* 747 F.2d at 1453, 223 USPQ at 1165 ("Where a special verdict does not contain one or more answers requested, it may, unless wholly defective, be accepted for those issues that are resolved. It is a 'special verdict' to the extent findings are made."). We therefore turn to the trial court's final judgment, and the rulings contained therein.

### B.

■ The trial court's post-verdict rulings are of course reviewable on appeal. We have a substantial problem in this particular case, however, in light of the terse four-page judgment of the trial court. This judgment lacks any rationale for the court's decisions on the parties' various post-verdict motions. Specifically, with respect to the court's entry of JMOL in favor of Spectramed on all issues of infringement, the trial court offered no explanation as to how it arrived at this decision. One option in such a case, not to be discarded lightly, is to vacate the judgment of the trial court and remand the matter to that court for a full explication of the reasons for the court's rejection of the jury's findings.

■ There is another option, however, which avoids the inefficiencies of having the appellate court review and decide the issue twice. We review judgments, not opinions. *In re Hyatt,* 708 F.2d 712, 715, 218 USPQ 195, 198 (Fed.Cir.1983); *see also Constant v. United States,* 929 F.2d 654, 657, 18 USPQ2d 1298, 1300 (Fed.Cir.), *cert. denied,* 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 973 (1991) ("[I]t is the validity of the *judgment,* not the quality of any *opinion* supporting it, that has legal significance. . . ."). On appeal we are free to examine the record to determine whether the facts support the judgment. *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 814, 15 USPQ2d 1481, 1489 (Fed.Cir.1990) ("An appellate court need not close its eyes to the record . . . where . . . there is a way clearly open to affirm the district court's action."). The record before us is adequate for us to fully review the question of whether the trial court correctly granted JMOL on the issue of infringement.

### 1. Grant of Spectramed's Motion for JMOL on Infringement

■ In considering whether the district court erred in granting Spectramed's motions for JMOL on the issue of infringement, we must keep in mind the standard of review when assessing a jury verdict: whether the jury's express or implied findings of fact are supported by substantial evidence. *See Read Corp. v. Portec Inc.,* 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992). This test "requires us to decide for ourselves whether reasonable jurors viewing the evidence as a whole could have found the facts needed to support the verdict in light of the applicable law." *Lemelson v. General Mills, Inc.,* 968 F.2d 1202, 1207, 23 USPQ2d 1284, 1288 (Fed.Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 976, 122 L.Ed.2d 131 (1993). Accordingly, the specific issue before us is whether the district court erred in its determination that no reasonable jury could have found claims 1, 2, 13, 14, 17, 18, 21, and 44 of the '256 patent, properly construed, to be literally infringed by Spectramed's accused devices.

■ Determining whether a claim in a patent has been infringed is a two-step process: first, the claim must be interpreted, as a matter of law, to ascertain its proper scope; second, a determination must be made whether the properly construed claim reads on the accused device. *Lemelson,* 968 F.2d at 1206, 23 USPQ2d at 1287. The first step, claim interpretation, is a question of law. The second, infringement, is a question of fact. *North Am. Vaccine, Inc. v. American Cyanamid Co.,* 7 F.3d 1571, 1574, 28 USPQ2d 1333, 1335 (Fed.Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994). We first consider literal infringement,[12] which requires that each limitation in the asserted claim be found present in the accused device or process. *Id.* Un-

---

12. In view of our decision on literal infringement, we need not address infringement under the doctrine of equivalents.

like many cases that come before us, the parties do not dispute the meaning of the claim terms. The question instead turns on whether the accused devices infringe the claims as written. Spectramed's principal argument in support of the district court's grant of JMOL is that their "accused devices"[13] cannot infringe because Spectramed's gray connecting cables, which are used in combination with the prior art DTX transducer, were constructed using only the teachings of a prior art reference, the Murray/Howe publication.

Spectramed argues that the record is devoid of substantial evidence showing that their gray cable is different from that disclosed in Fig. 4 of Murray/Howe. According to Spectramed, the trial court properly set aside the jury's findings of infringement because Spectramed only used what was already disclosed in the prior art, viz., their prior art DTX device in combination with the teaching of Murray/Howe regarding backside calibration.

■■■ Implicit in Spectramed's argument is that Baxter, in order to establish literal infringement, must prove by a preponderance of the evidence that Spectramed's accused devices embody all the limitations in the asserted claims, and in addition, Spectramed's accused devices must not be an adoption of the combined teachings of the prior art. This is not a correct statement of the law governing patent infringement. There is no requirement that the accused device be nonobvious in light of the prior art, or otherwise be itself patentable. Literal infringement exists if each of the limitations of the asserted claim(s) read on, that is, are found in, the accused device. Questions of obviousness in light of the prior art go to validity of the claims, not to whether an accused device infringes.[14]

■■■ With the correct test in mind, and in the absence of the trial judge's explanation of why she thought the jury's finding on infringement unsupported, we have independently examined the record before the jury. We conclude that there was ample evidence before the jury to support a finding that the claims, as construed, read on Spectramed's accused devices. Given the deferential standard applied to jury verdicts, we find no basis for upsetting the jury verdict in this regard, and accordingly we reverse the trial court's grant of JMOL of no infringement.[15]

### 2. Refusal to Enter Judgment on Special Interrogatories 9 and 11

■■■ Baxter also appeals the district court's refusal to enter judgment in their favor on the issues in Special Interrogatories 9 and 11. According to Baxter, the jury's failure to unanimously find in favor of Spectramed with respect to anticipation and obviousness, the subject matter of Special Interrogatories 9 and 11, supports a conclusion that Spectramed has failed to meet its burden of proving invalidity on these issues by clear and convincing evidence. It therefore follows, argues Baxter, that the court should have entered judgment in favor of Baxter on Special Interrogatories 9 and 11. We disagree.

Baxter moved for judgment on Special Interrogatories 9 and 11 under FRCP 58. Al-

13. The term "accused devices" refers to the combination of Spectramed's various blood pressure transducers with the connecting gray cable. Spectramed argues that this term should not include the connecting gray cable. However, the claims at issue include a limitation for a cable that provides backside calibration and connects the transducer to a monitor, and therefore we conclude that inherent in the jury's finding of infringement was that the term "accused devices" in the complaint consisted of the transducers in combination with the gray cable. Since this inherent jury finding was supported by substantial evidence, we conclude that the term "accused devices" consists of Spectramed's transducers in combination with their gray cable.

14. Spectramed's argument could also be used to limit the permissible range of equivalents under the doctrine of equivalents, see, e.g. Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 14 USPQ2d 1942 (Fed.Cir.), cert. denied, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990), but since we conclude that Spectramed literally infringes, we need not consider infringement under the doctrine of equivalents.

15. We also conclude that there is substantial evidence to support the jury's finding that Spectramed induced infringement of Claim 20. Baxter did not allege literal infringement of this claim.

though this rule does allow a court to enter judgment upon receiving a special verdict, the jury did not agree on answers to Special Interrogatories 9 and 11, and therefore these issues did not form a part of the special verdict. *See Quaker City,* 747 F.2d at 1452–53, 223 USPQ at 1165. Accordingly, the district court did not err in declining to enter judgment pursuant to Baxter's FRCP 58 motion.

### 3. Cross–Appeal

In light of our reversal of the trial court's grant of JMOL on the infringement issue, we turn to Spectramed's cross-appeal. Spectramed first argues that the district court erred in denying its motion for JMOL that the '256 patent is unenforceable due to inequitable conduct. Spectramed contends that during prosecution the patentee withheld material prior art and seriously misstated the content of the Murray/Howe reference, and that culpable intent must be inferred from these misrepresentations. Though citing various aspects of the record to support their arguments, Spectramed ignores the standard of review which this court is bound to apply.

■ Because it is an equitable issue, the ultimate determination of inequitable conduct is committed to the discretion of the trial court and reviewed by this court for abuse of discretion. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir. 1988) (in banc), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). Establishing that inequitable conduct occurred during prosecution of a patent requires proof by clear and convincing evidence of two underlying facts: that the misrepresentation was material, and that the patentee acted with intent to deceive. *Kingsdown,* 863 F.2d at 872, 9 USPQ2d at 1389. Since inequitable conduct is a matter for the trial judge, and not the jury, these factual issues ordinarily are not jury questions. Although the ultimate determination of whether inequitable conduct occurred is reviewed under the abuse of discretion standard, the question of whether the trial judge correctly found the existence of these underlying facts is reviewed under the traditional standard for fact finding, the clearly erroneous standard. *General Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1408, 30 USPQ2d 1149, 1152 (Fed.Cir.1994).

■ However, in this case both parties consented to a jury trial of these factual issues in the form of special interrogatories. Accordingly, we grant the jury the deference due it and review their findings under the substantial evidence standard. We will not disturb the judgment at issue here unless it is based upon a jury's findings of fact that are unsupported by substantial evidence, a misapplication or misinterpretation of the applicable law by the judge, or evidences a clear error of judgment. *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990).

■ The jury unanimously found that Spectramed had failed to prove either materiality or intent to mislead the PTO. Upon reviewing the record as a whole we find substantial evidence to support the finding of a lack of requisite intent. In particular, Dr. Wallace, the patentee, testified that during the prosecution of the '256 patent he was unaware of any other prior art that was relevant to the novel aspect of his claimed invention, namely a cable that provided for venting and backside calibration of a transducer. In evaluating whether there is substantial evidence in the record on this point, we accord great deference to the jury's view of such testimony. *See id.* at 542, 16 USPQ2d at 1625 ("[T]he persons accused of inequitable conduct actually testified as witnesses, and the jury's assessment of their character and credibility is entitled to great deference."). Moreover, Spectramed's proof of intent rests entirely on inferences to be drawn from the materiality of the alleged misrepresentations. Such inferences, though appropriate if made by the trier of fact, are not for the trial judge to make on JMOL, or for this court on appeal. Accordingly, we conclude that the trial court did not abuse its discretion in denying Spectramed's motion for JMOL on the issue of inequitable conduct.

However, paragraph 2 of the trial court judgment, which grants JMOL in favor of

Baxter that the patent was not obtained through inequitable conduct, must be vacated. Baxter did not move for JMOL under FRCP 50(b) at the close of all the evidence. Furthermore, paragraph 2 is superfluous in light of paragraph 1 of the trial court judgment, which enters judgment in favor of Baxter based on the jury's findings that the '256 is not unenforceable due to inequitable conduct.

 Spectramed further argues in its cross-appeal that the district court erred by not expressly ruling, in response to Spectramed's Rule 50(b) motions, that the claims at issue are obvious over the prior art DTX transducer in combination with Fig. 4 of the Murray/Howe reference. Whether the claims at issue in the '256 patent are obvious in light of the combined teachings of the prior art was the subject of Special Interrogatory 11. The jury did not unanimously decide this issue, with the result there was no jury verdict on this matter. The trial court specifically stated with regard to this issue: "No judgment shall be entered on defendant Spectramed, Inc.'s counterclaim ... that the Wallace '256 patent would have been obvious to a person having ordinary skill in the art, and that it is therefore invalid under 35 U.S.C. § 103 . . . ."

Spectramed assigns this failure to rule on its 50(b) motion as error. Spectramed is correct. The trial court should have acted to obtain a decision on the invalidity defense, particularly in view of a jury verdict that found for plaintiff on infringement.

In view of our decision that the trial court erred in granting JMOL for Spectramed on the issue of infringement, we have considered whether, in the interests of judicial economy, we should decide in the first instance the question of invalidity for obviousness. It is likely that all the relevant matter is in the record, and the question of obviousness is ultimately a question of law. Nevertheless, we sit as a court to review claims that a trial judge erred, and not as a court of first instance.

The error here is the failure of the judge to have entered judgment regarding the question of invalidity. Spectramed was entitled to have a final determination by the trial court on its allegations that the patent in suit was invalid, a determination that we could properly review on appeal. The trial court acknowledged that her judgment adjudicated fewer than all of the claims made by the parties, but nevertheless entered final judgment on those that were adjudicated. It is now necessary for the trial judge to decide the remaining issue of invalidity under § 103.

## CONCLUSION

The trial court's grant of JMOL that Spectramed did not infringe the '256 patent is reversed. The trial court's refusal to enter judgment in favor of Baxter on the issues in Special Interrogatories 9 and 11 is affirmed. Likewise, the trial court's decision on the issue of inequitable conduct is affirmed, except with respect to paragraph 2 of the judgment, which is vacated. The case is remanded to the trial court for a ruling on Spectramed's motions regarding validity of the '256 patent.

## COSTS

Each party to bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART, AND REMANDED.*