GENERAL ELECTRO MUSIC CORP.,
and General Music S.P.A.,
Plaintiffs–Appellees,

v.

SAMICK MUSIC CORPORATION,
Defendant–Appellant.

No. 93–1299.

United States Court of Appeals,
Federal Circuit.

March 22, 1994.

Daniel P. Hogan, Ross & Hardies, of Chicago, IL, argued for plaintiffs-appellees. With him on the brief was P. Matthew Glavin.

David A. Dillard, Christie, Parker & Hale, of Pasadena, CA, argued for defendant-appellant.

Before NIES *, LOURIE and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Samick Music Corporation appeals from a final judgment of the United States District Court for the Northern District of Illinois entered in favor of General Electro Music Corporation and General Music, S.P.A. pursuant to jury verdicts that Samick's U.S. Design Patent 310,232 was unenforceable by reason of inequitable conduct and invalid on the ground of obviousness under 35 U.S.C. § 103 (1988), and that General Electro Music and General Music did not engage in trade dress infringement. *General Electro Music Corp. v. Samick Music Corp.,* No. 90 C 5590 (N.D.Ill. Aug. 17, 1992). The district court denied Samick's post-trial motions for judgment as a matter of law and for a new trial. We affirm-in-part.

## BACKGROUND

General Electro Music commenced this action on September 25, 1990, seeking a declaratory judgment that Samick's '232 design patent, entitled "Electronic Baby Grand Piano," was unenforceable, invalid, and not in-

---

* Circuit Judge Helen W. Nies vacated the position of Chief Judge on March 17, 1994.

fringed. Samick answered and filed a counterclaim asserting patent infringement and trade dress infringement. Samick also filed counterclaims on the same theories against General Music as a third party defendant. General Music counterclaimed seeking a declaratory judgment of unenforceability, invalidity, and noninfringement. For purposes of this appeal, General Electro Music and General Music have consolidated their arguments and will be collectively referred to as "GEM."

GEM's claim that Samick engaged in inequitable conduct before the Patent and Trademark Office ("PTO") pertained in part to a "petition to make special" that Samick filed through its patent attorney, Walter Maxwell, on July 21, 1989, during prosecution of the application which ultimately issued as the '232 patent. *See* 37 C.F.R. § 1.102 (1992); U.S. Patent and Trademark Office, *Manual of Patent Examining Procedure* (MPEP), § 708.02 (9th rev. 1988) (setting forth requirements for petitions to make special). Samick sought expedited examination of its application on the ground that the claimed design was being infringed. *See* MPEP § 708.02, II. At the time Samick filed its petition, the MPEP required that an applicant support a petition to make special with an oath or declaration alleging facts showing, among other things, "that he or she has made or caused to be made a careful and thorough search of the prior art or has a good knowledge of the pertinent prior art." MPEP § 708.02, II(5). In support of the petition, Maxwell filed a declaration in which he described the alleged infringement and referred to a prior art search. Maxwell stated: "[A] prior art search conducted on the subject matter of this design application has uncovered ... U.S.Des. 260,528 to Decker." Maxwell stated under oath that the statements in his declaration were true, and further acknowledged that any willful false statements would jeopardize the validity of the application and any patent issuing therefrom:

I hereby declare that all statements made herein in my own knowledge are true and that all statements made on information and belief are believed to be true and further that these statements are made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both ... and that such willful false statement my [sic, may] jeopardize the validity of this application or any patent issuing thereon or any patent to which this verified statement is directed.

On August 31, 1989, the Commissioner granted Samick's petition and Samick thereafter received expedited examination of its application. The examiner rejected Samick's claim as obvious over four prior art references, none of which was cited by Maxwell in his declaration. Samick argued to the PTO that the claimed design was patentable over the cited prior art. On August 28, 1990, Samick's application issued as the '232 patent.

At Samick's request, the action was tried to a jury. GEM asserted that Samick engaged in inequitable conduct during prosecution of the '232 patent application by making a material false statement to the PTO. GEM alleged that Maxwell did not conduct a prior art search before filing the petition to make special and lied under oath when he said that he had.[1]

Samick's position was that Maxwell's statement that he conducted a prior art search was not false because Maxwell had asked numerous individuals in the piano design industry whether they knew of pertinent prior art designs and had searched his own files for prior art. Samick maintained that Maxwell's activities constituted a legitimate prior art search. Samick conceded, however, that Maxwell did not conduct the equivalent of a prior art search in the PTO files, nor did he hire a professional searcher to carry out such a search.

Following a five-day trial, the jury returned special verdicts finding that Samick intentionally made a material false statement to the PTO regarding its search of the prior art. The jury further found that the '232 patent was invalid because the claimed design would have been obvious to one of ordinary skill in the art at the time it was

---

1. GEM also asserted that Samick intentionally withheld material prior art from the PTO. The jury disagreed, and that issue is not before us on appeal.

created, and that there was no trade dress infringement. Accordingly, the court entered judgment in favor of GEM, declaring the '232 patent unenforceable by reason of inequitable conduct and invalid for obviousness. Samick filed a post-trial motion for judgment as a matter of law (JMOL) or, in the alternative, for a new trial. The court refused to overturn the jury's verdicts, stating that "[t]here was ample evidence to support all of the jury's findings." Slip op. at 3. Accordingly the court denied Samick's motions, and Samick now appeals.

## DISCUSSION

### A. *Inequitable Conduct*

"The concept of inequitable conduct in patent procurement derives from the equitable doctrine of unclean hands: that a person who obtains a patent by intentionally misleading the PTO can not enforce the patent." *Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387, 1394, 7 USPQ2d 1222, 1228 (Fed.Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 395, 102 L.Ed.2d 383 (1988). A patent may be held unenforceable by reason of a patentee's inequitable conduct in, among other things, the submission of material false information with an intent to deceive. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed.Cir.1988) (in banc), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

The ultimate question whether there was inequitable conduct is committed to the discretion of the trial court and we review the court's determination that Samick engaged in inequitable conduct for abuse of discretion. *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990), *cert. denied*, 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (1991); *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1190, 25 USPQ2d 1561, 1568 (Fed.Cir.1993). We will not disturb that determination absent a showing that it was based upon erroneous finding of fact, a misapplication or misinterpretation of applicable law, or evidences a clear error of judg-

ment. *Modine*, 917 F.2d at 541, 16 USPQ2d at 1624 (citations omitted).

The disputed issues of fact underlying the issue of inequitable conduct are not jury questions, the issue being entirely equitable in nature. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212, 2 USPQ2d 2015, 2018 (Fed.Cir.1987). Thus, the facts are ordinarily for the court to resolve, accompanied by findings of fact in accordance with Rule 52(a). Samick made correction of error more difficult for itself by having had the issues of fact respecting inequitable conduct decided by a jury by means of special verdicts. Because both parties consented to trial of the factual issues by the jury, the special verdicts have the same effect as if trial by jury had been a matter of right and the verdict cannot be treated as advisory only. *Modine*, 917 F.2d at 542 n. 2, 16 USPQ2d at 1625 n. 2. Thus, we review the special verdicts under the stringent substantial evidence standard, rather than under the more lenient clearly erroneous standard of Rule 52(a).

The jury found that Maxwell's statement in the petition to make special concerning conducting a prior art search was material and intentionally false. In denying Samick's motion for JMOL, the district court determined that that finding was "clearly supported by the evidence, cannot be set aside and justifies a conclusion of more than gross negligence." Slip op. at 4. On that basis, the court entered judgment that Samick's patent was unenforceable by reason of inequitable conduct before the PTO. Samick argues that that ruling was erroneous, asserting only that the jury's underlying finding of fact is not supported by substantial evidence. Samick does not urge that the district court abused its discretion on any other ground. Accordingly, the only issue before us is whether the jury's finding that Samick intentionally made a material false statement to the PTO regarding its search of the prior art is supported by substantial evidence. *See Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.) (citation omitted), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). Under this standard, we review the

evidence in the light most favorable to GEM, the non-moving party, drawing all reasonable inferences in GEM's favor, to determine whether reasonable persons could have arrived at the jury's finding. *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1454–55, 223 USPQ 1161, 1166–67 (Fed. Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985). We will disturb the jury's verdict "only if the evidence so conclusively favors [Samick, the moving party,] that reasonable jurors could not arrive at a contrary verdict." *Tol–O–Matic, Inc. v. Proma Produkt–Und Mktg.*, 945 F.2d 1546, 1549, 20 USPQ2d 1332, 1335 (Fed.Cir.1991).

Samick first asserts that Maxwell's statement was not false because Maxwell's investigation "was unquestionably a 'search for prior art.'" Maxwell, testifying on behalf of Samick, was asked on cross-examination whether there is a common understanding among patent lawyers practicing before the PTO as to the requirements of a prior art search. Maxwell answered: "Well, I think what you're referring to is a formal search, and I don't believe that that's—a formal search is necessary or required or meant by the words 'prior art search.'" Maxwell further testified that a formal prior art search is one conducted by a professional searcher in the PTO files. Samick asserts that a "prior art search" as required by the MPEP does not need to be a "formal" search, and that the type of investigation conducted by Maxwell was permissible. Hence, it asserts, Maxwell's statement was not false.

■ Terrence McMillin, the patent attorney who rendered an opinion for GEM that the '232 patent was invalid and unenforceable, testified that "prior art search" has an established meaning among patent attorneys as a search conducted by either an attorney or a paid searcher in the PTO files

or an equivalent search on a computer.[2] GEM asserts that the jury's finding that Maxwell's statement was false is supported, not only by McMillin's testimony, but by sufficient evidence before the jury from which it could reasonably conclude that Maxwell failed to perform *any* search. GEM points out that Samick's story regarding the extent of Maxwell's prior art investigation was inconsistent throughout discovery and trial. For each of Samick's assertions, GEM points to an inconsistency in the record. For example, Jones, one of Samick's employees whom Maxwell allegedly asked about prior art stated that Benson was one of the individuals to whom he spoke. During trial, however, Benson, who testified on Samick's behalf, denied that he was ever consulted by Samick regarding prior art.

In addition, GEM asserts that Samick presented various inconsistent stories regarding how the Decker patent was "uncovered" by Maxwell. Maxwell's petition to make special stated that he uncovered the Decker patent as a result of a prior art search. However, GEM points out that in response to GEM's request for an admission that "[the Decker patent] did not come to the attention of Samick as a result of a prior art search," Samick's response was "Admitted." Furthermore, in an interrogatory, GEM asked Samick to describe the circumstances under which Samick and Maxwell first became aware of the Decker patent, and Samick responded that it became aware of that patent "as a result of receiving a letter dated from Mr. Decker in or about June 1988." GEM asserts that that statement is contrary to Maxwell's statement under oath that he "uncovered" the Decker patent as a result of his prior art search.

It is clear that Samick and GEM each have different versions of the facts pertaining to

---

**2.** We reject Samick's argument that the trial judge abused his discretion in permitting McMillin to testify on the meaning of prior art search. Samick's assertion of error is based on GEM's alleged failure to identify McMillin as an expert prior to trial. Samick asserts that it was prejudiced because it did not have an opportunity to call a rebuttal expert witness. At trial, the judge refused to sustain Samick's objection, reasoning that because Maxwell was allowed to testify on

this issue on behalf of Samick, GEM was likewise entitled to offer competing testimony on the meaning of the disputed phrase. A decision to allow expert testimony is within the discretion of the trial court and will not be disturbed absent an abuse of such discretion. *Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942, 18 USPQ2d 1707, 1709 (Fed.Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991). We find no such abuse of discretion here.

Maxwell's alleged search. The jury heard and observed the witnesses and we have no basis on which to disturb its credibility determinations. Based on the evidence before it, a reasonable jury could have chosen not to believe Samick's story and concluded that Maxwell did not perform the search he said he did.

· Both parties agree that at the time Samick filed its petition, the MPEP required a declaration under oath that the applicant has made a "careful and thorough search of the prior art." Both parties offered testimony on the meaning of "prior art search." The jury, which heard and observed the testimony of both Maxwell and McMillin could reasonably have concluded that Maxwell's alleged activities did not constitute a prior art search as required by the PTO. A "careful and thorough" prior art search requires more than looking in one's files and talking to one's colleagues. · Such a search normally requires going beyond one's internal sources of information, and utilizing external sources. That clearly did not occur here. The fine distinctions attempted to be made by Samick concerning the meaning of "prior art search" overlook the clear implication in Maxwell's declaration that a search was conducted in accordance with the PTO's requirements, whereas, in fact, no careful and thorough prior art search was made. Maxwell's search only turned up the Decker patent. There was other prior art that Samick could readily have found. . The examiner, after conducting his own search, cited four relevant prior art references, GEM produced additional pertinent prior art during litigation, and Samick itself produced numerous documents concerning its own prior art designs. In view of these facts, it was not unreasonable for the jury to find that Samick did not conduct a prior art search as Maxwell claimed to have done, and certainly that he did not make a "careful and thorough" search.[3]

▮▮ Finally, Samick points out that under the MPEP an applicant filing a petition to make special may represent either that he has conducted a careful and thorough search of the prior art or that he has "good knowledge of the pertinent prior art." MPEP § 708.02, II(5). Samick states that Maxwell could have stated that he had good knowledge of the prior art. Samick thus appears to argue that Maxwell's statement that he conducted a prior art search was not false because he could have truthfully stated that he had good knowledge of the prior art. Samick's argument misses the point. The issue is not whether an alternative statement would have been truthful, but whether Maxwell's actual statement that a prior art search was conducted was false. Based on the evidence before it, the jury could reasonably have found that it was.

▮▮ Samick next urges that, even if Maxwell's statement was false, the jury erred in finding it material. The jury was instructed that "[i]nformation is 'material' to a patent application where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." Samick asserts that Maxwell's statement was not material because the patent examiner conducted his own prior art search notwithstanding Samick's declaration. Samick thus appears to argue that, based on the jury instructions, a reasonable jury could not have found that Maxwell's false statement was material because an examiner is required to conduct his prior art search and an applicant's misrepresentation that he searched the prior art therefore cannot be material.

The flaw in Samick's argument is that it reads the above jury instruction out of context. In the next paragraph of its instruc-

---

**3.** Samick relies on *Chaparral Indus., Inc. v. Boman Indus., Inc.*, 697 F.Supp. 1113, 7 USPQ2d 1789 (C.D.Cal.1988), in support of its interpretation of the meaning of "prior art search." That case also concerned a charge of inequitable conduct based on a patent attorney's alleged misrepresentation in a petition to make special that he had conducted a prior art search. The district court held that there was no evidence that the

patent attorney failed to conduct a prior art search because he "frequently consulted both technological journals and [the inventor] for instruction on the status of relevant prior art." 697 F.Supp. at 1122, 7 USPQ2d at 1795. *Chaparral* is not binding on us and, to the extent that the above-quoted statement is contrary to our holding here, it is unpersuasive.

tions, the court tied materiality to the securing of expedited consideration of the application. The whole point of the PTO requirement that a petition to make special include a sworn statement that the applicant has made *a careful and thorough search* is that, in return for an applicant being put at the head of the examining line, he must make an extra effort to *look for* and produce all relevant prior art, in other words, to assist an examiner who is being asked to expedite examination. By filing a petition to make special, Samick thus requested special treatment and induced reliance on its statement that a prior art search had been conducted. Samick cannot now argue that that statement was immaterial.

On this matter we find relevance in the Ninth Circuit's ruling in *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 160 USPQ 577 (9th Cir.1969), which involved a district court finding that a patentee procured its patent through misrepresentations to the PTO by filing a petition to make special declaration containing "deliberate lies." 407 F.2d at 296, 160 USPQ at 582. On appeal, the patentee argued that the misrepresentations were not material "because the sole purpose of the petition [to make special] was to accelerate a patent application." The Ninth Circuit rejected that argument, stating that "[i]t may be true that the misrepresentations did not relate to an ultimate fact, but the use of willfully false testimony cannot be fully rinsed away with a solution composed primarily of legal semantics." *Id.* Such is the case here. "In contrast to cases where allegations of fraud are based on the withholding of prior art, there is no room to argue that submission of false affidavits is not material." *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1561, 220 USPQ 289, 300 (Fed.Cir. 1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984) (dealing with affidavits containing false and misleading data submitted for the purpose of overcoming prior art rejections). We conclude as a matter of law that a false statement in a petition to make special is material if, as in the case here, it succeeds in prompting expedited consideration of the application. The court's instructions as a whole did not restrict mate-

riality to the merits of the application but were correctly understood by the jury to include a PTO decision to examine the application sooner than otherwise. There was thus no error in the jury's finding of materiality.

■ Finally, Samick asserts that even if Maxwell did make a false and material statement to the PTO, he did not intend to deceive the PTO, and that the jury's finding to the contrary was not supported by substantial evidence. Samick particularly points to Maxwell's testimony that he believed he had complied with the requirements of the MPEP and that a formal search of the PTO files was not required. Samick thus appears to assert that Maxwell's testimony alone establishes an absence of intent to deceive.

"While direct proof of intent to mislead is normally absent, [the submission of a false or misleading statements] usually will support the conclusion that the affidavit in which they were contained was the chosen instrument of an intentional scheme to deceive the PTO. In any event, proof of the actual state of mind of the applicant or persons associated with or representing an applicant is not required." *Rohm*, 722 F.2d at 1571, 220 USPQ at 301.

■ Furthermore, contrary to Samick's argument, mere denials of intent to mislead may not be sufficient to overcome circumstantial evidence of intent to deceive. *LaBounty Mfg., Inc. v. United States Int'l Trade Comm.*, 958 F.2d 1066, 1076, 22 USPQ2d 1025, 1033 (Fed.Cir.1992). *See also Paragon*, 984 F.2d at 1191, 25 USPQ2d at 1568 ("If a bare declaration of lack of intent to mislead where a false material affidavit is submitted to the PTO were to raise a genuine issue, summary judgment would be precluded in all cases except where no response at all is made."). Maxwell testified as to his lack of intent, but "the jury's assessment of [his] character is entitled to great deference." *Modine*, 917 F.2d at 542, 16 USPQ2d at 1625. We have no basis to overturn that credibility determination. Accordingly, we conclude that the facts before the jury support its finding that Maxwell intentionally made a material false statement to the PTO.

In sum, based on the evidence before it, a reasonable jury could have found that Samick's statement that it conducted a prior art search, submitted under oath to comply with the requirement of a careful and thorough prior art search, was false, material, and made with intent to deceive the PTO. Accordingly, we conclude that the district court did not abuse its discretion in determining that Samick engaged in inequitable conduct before the PTO and that the '232 patent is thus unenforceable.

## B. *Trade Dress Infringement*

 The jury was instructed that to succeed on its claim of trade dress infringement Samick was required to prove that its trade dress was inherently distinctive, that the trade dress of the Samick and GEM products were confusingly similar, and that the appropriated features of the trade dress were not primarily functional. *See Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1182–83, 10 USPQ2d 1001, 1006 (7th Cir. 1989); *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444–45, 221 USPQ 97, 110 (Fed.Cir.1984). The jury found that Samick failed to establish trade dress infringement and the district court refused to disturb that verdict. Samick has not convinced us that that decision was in error.

Samick does not challenge the jury instructions or the admission of any evidence. Samick, as it has done throughout this entire appeal, seeks a retrial by selectively emphasizing testimonial and documentary evidence which it alleges supports its position. Samick urges us to compare its piano designs with those of GEM and other manufacturers. Samick tells us that upon such a comparison we will see that the designs of other manufacturers "do not resemble Samick's piano in the least," thus showing inherent distinctiveness, and that Samick's and GEM's pianos are "almost identical," thus showing likelihood of confusion. We decline to substitute our judgment on these issues of fact, *see Schwinn*, 870 F.2d at 1187, 1191, 10 USPQ2d at 1010, 1014, for that of the jury who heard and observed the numerous witnesses and examined the documentary evidence. Based on our review of the record, a reasonable jury could have concluded that Samick failed to establish the requisite elements of trade dress infringement. We thus conclude that the district court properly refused to overturn the jury verdict on this issue.

## C. *Validity*

Samick also challenges the district court's refusal to set aside the jury's verdict that the '269 patent is invalid on the ground of obviousness. We need not reach this issue given our determination that Samick's patent is unenforceable. Such a decision not to review validity is not inconsistent with the Supreme Court's mandate in *Cardinal Chemical Co. v. Morton International, Inc.*, —— U.S. ——, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721 (1993), which addressed the question whether a judgment of invalidity can be vacated following a finding of noninfringement.

In *Cardinal*, the Court held that our prior practice of vacating validity judgments following a holding of noninfringement was not justified on jurisdictional grounds. The Court pointed out that a party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement and that, assuming district court jurisdiction over that claim was proper, jurisdiction is not lost on appeal.

However, the Court recognized that other, non-jurisdictional factors, such as judicial economy, might nevertheless support a determination not to review validity. The Court instructed that the propriety of such a practice is to be assessed against certain "countervailing concerns" relating to the interests of the defendant, the public at large, and the patentee. Regarding the defendant, the Court recognized "the interest of the successful litigant in preserving the value of a declaratory judgment [of invalidity] that ... 'it obtained at great effort and expense'" so that it need not fear similar infringement suits in the future. —— U.S. at ———–——, 113 S.Ct. at 1976–77, 26 USPQ2d at 1728 (citation omitted). Second, the Court emphasized "the importance to the public at large of resolving questions of patent validity" and the risk of "impos[ing] ongoing burdens on competitors who are convinced that a patent

has been correctly found invalid." *Id.* at ——, 113 S.Ct. at 1978, 26 USPQ2d at 1729. Finally, the Court recognized the interest of a patentee in securing appellate review on validity, stating that "[i]f, following a finding of noninfringement, a declaratory judgment on validity is routinely vacated, ... the patentee may have lost the practical value of a patent that should be enforceable against different infringing devices." *Id.*

 Contrary to the situation in *Cardinal,* none of the concerns enumerated by the Supreme Court is present when a patent has been held to be unenforceable rather than not infringed. The principle of *Blonder–Tongue Labs., Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971), respecting collateral estoppel also applies to unenforceability. Thus, there is no risk that others will be subject to infringement suits in the future because the patentee cannot enforce a patent held unenforceable after a full and fair opportunity, as here, to litigate the issue. Nor is there need for the patentee to secure an appellate court's validity determination regarding an unenforceable patent. The patent is simply not enforceable, regardless of its validity. We thus conclude that we are not required to review the issue of validity following a holding that the patent is unenforceable and considerations of judicial economy may prevail. Hence, we do not review the district court's obviousness holding.

## CONCLUSION

There was substantial evidence to support the jury's finding that Samick intentionally made a material false statement to the PTO. As such, the district court did not abuse its discretion in determining that the '232 patent was unenforceable because of inequitable conduct. The jury's verdict on trade dress infringement was also supported by substantial evidence. Accordingly, the district court did not err in denying Samick's post-trial motions regarding either of these issues. In view of our determination that Samick's patent is unenforceable, we need not reach the issue of obviousness.

COSTS

No costs.

*AFFIRMED–IN–PART.*