ULEAD SYSTEMS, INC., a California corporation, Plaintiff,

v.

LEX COMPUTER & MANAGEMENT CORP., a New Hampshire corporation, Defendant.

No. CV 98–5880 DT(CTx).

United States District Court, C.D. California.

Jan. 22, 2001.

Jon E. Hokanson, Kenneth L. Wilton, Jill A. Schwartz, Small Larkin, LLP, Los Angeles, CA, for Ulead Systems, Inc.

Robert Jacobs, William H. Pavitt, Jr., Beehler & Pavitt, Culver City, CA, for Lex Computer & Managment Corp.

ORDER **GRANTING** ULEADS' (CALIFORNIA AND TAIWAN) JOINT MOTION NO. 1 FOR SUMMARY JUDGMENT OF UNENFORCEABILITY, INVALIDITY AND/OR EXPIRATION OF U.S. PATENT NO. 4,538,188

TEVRIZIAN, District Judge.

*Background*

### A. Introduction

This action is brought by Plaintiff Ulead Systems, Inc., a California corporation, ("Ulead") against Defendant Lex Computer & Management Corp. ("Lex") for Declaratory Judgment of Non–Infringement, Invalidity and Unenforceability of U.S. Patent No. 4,538,188. Plaintiff and Counter–Defendant Ulead–California and Cross–Defendant and Counter–Claimant Ulead–Taiwan in Motion No. 1 for Summary Judgment of Unenforceability, Invalidity and/or Expiration of U.S. Patent No. 4,538,188 jointly move the Court for an

order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting Summary Judgment on their respective claims for a judicial declaration that U.S. Patent No. 4,538,188 (the "'188 Patent") is unenforceable and/or invalid due to the inequitable conduct of Defendant, Counter-Claimant, Cross–Claimant and Counter-Defendant Lex and its President, lead counsel, and sole shareholder, Simon V. Haberman, and is expired due to Lex's failure to pay the maintenance fees required under 35 U.S.C. § 41(b) and (c).

## B. Factual Summary of Complaint

The following facts are alleged in Plaintiff Ulead's Complaint:

Plaintiff Ulead imports, uses and sells personal computer-implemented software products. *See*, Complaint at ¶ 6. Among the products offered by Ulead is one known as MediaStudio Pro. *Id.* The MediaStudio Pro software is used to manage and manipulate sound and image files that are stored in digital form and that have been pre-addressed prior to any manipulation by the MediaStudio Pro software. *Id.*

Defendant Lex is believed to be the owner of the entire right, title and interest in and to United States Patent 4,538,188 ("the '188 Patent"), entitled "Video Composition Method and Apparatus." The '188 Patent is directed to the manipulation of video and sound images that are stored in analog form on video tape and have not been pre-addressed prior to any manipulation by the patented apparatus and/or method. *Id.* at ¶ 7. Beginning in May 1997 and continuing to the present Lex has asserted that Ulead's sale, manufacture, use and/or leasing of its MediaStudio Pro software infringes the '188 Patent. *Id.* at ¶ 8. Plaintiff Ulead denies that its sale or use of the MediaStudio Pro software, challenged by Lex, infringes the '188 Patent and denies that it manufactures and/or leases the MediaStudio Pro software in the United States. Plaintiff Ulead also believes and alleges the '188 Patent is invalid and/or unenforceable. As a result, Ulead does not intend to cease the use of sale of the MediaStudio Pro software. *Id.* at ¶ 9.

Plaintiff Ulead alleges that there currently exists an actual and justiciable controversy over Ulead's right to continue to use and sell the MediaStudio Pro software that Lex claims infringes its alleged patent. As such, Plaintiff Ulead alleges that it is entitled to a declaratory judgment that its MediaStudio Pro software does not infringe the '188 Patent and/or that the '188 Patent is invalid and/or unenforceable. *Id.* at ¶ 10.

## C. The Following Facts are Undisputed for Purposes of Motion No. 1 for Summary Judgment.[1]

Simon V. Haberman is the President, director, and sole shareholder of Lex. *See*, Ulead's Statement of Uncontroverted Facts at ¶ 1.

Simon V. Haberman is a practicing attorney, licensed to practice law since 1950, and specializing in real estate and intellectual property law. *See*, Haberman Tr. at 125:3–13. Mr. Haberman failed the U.S. Patent Exam. *See*, Haberman Tr. at 158:11; *see also*, Lex's Statement of Genuine Issues at ¶ 2.

Mr. Haberman has asserted himself as lead counsel in this patent case, and, *inter alia*, a related case for patent infringement filed by Lex in New York. *See*, Ulead's Statement of Uncontroverted Facts at ¶ 3.

Mr. Haberman has studied for and taken the patent bar examination. Prior to taking the patent bar examination, Haberman twice, once in 1995 and once in 1997, took a patent review course offered by the Practicing Law Institute ("PLI"). *Id.* at ¶ 4; Haberman Tr., 156:13–21.

The PLI courses taken by Haberman had written course material that covered

---

1. The following undisputed facts represent those that are pertinent to this Motion for Summary Judgment. By no means do they represent all of the undisputed facts propounded by the moving party, Ulead.

maintenance fees, including the payment of "small entity" fees if the patent·owner qualifies as a small business entity. *See, Id.* at ¶ 5; *see also,* Lex's Statement of Genuine Issues at ¶ 5; Haberman Tr. at 158:12–23, 159:18–21, 192:20–25.

Irving Weiner ("Weiner"), a patent attorney registered to practice before the United State Patent and Trademark Office ("PTO"), is responsible for maintaining the '188 Patent, including paying the maintenance fees due on the patent. *See, Id.* at ¶ 6; Haberman Tr. 191:10–192:15. Mr. Weiner knows that Lex is in the business of licensing its patents, including the '188 Patent. *See,* Haberman Tr. 189:3–6.

Lex's sole business is to license its patents and collect royalties; it does not manufacture, distribute or sell any products. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 11; Haberman Tr., 80:10–25; 168:16–172:4; 215:1–5.

Lex's licensing program yielded twenty-one licenses by the summer of 2000 [the individual licenses are described in Paragraphs 14–39]. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 12; *see also,* Hokanson Decl., Exhs. 520–540.

Haberman signed each of these licenses on behalf of Lex, and is familiar with the companies to which the '188 Patent has been licensed. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 13; Haberman Tr. 185:22–24; 186:2–7.

Lex delegated the responsibility to pay the maintenance fees for the '188 Patent to its patent counsel, Irving Weiner. *See,* Ulead's Statement of Uncontroverted Facts at ¶ 40.

Weiner, on behalf of Lex, petitioned the PTO to accept "unintentionally delayed payment of maintenance fee" in an effort to reinstate the '188 Patent. *See, Id.* at ¶ 42.

In the Petition, Lex took the position that it qualified as a small entity and submitted a Verified Statement signed by Haberman asserting Lex's status as a small entity. *See, Id.* at ¶ 43. In the Petition,

Lex did not identify its licensees. *See, Id.* at ¶ 44.

Haberman read the declaration, declaring that Lex "qualifies as a small business concern as defined in 13 C.F.R. § 121.3–18, and reproduced in 37 C.F.R. § 1.9(d), for purposes [sic] of paying reduced fees under section 41(a) and (b) of Title 25, United States Code ...," agreed with it, and signed it. Haberman did not read 37 C.F.R. § 1.9(d) prior to signing the declaration. It is Lex's opinion (as of January 8, 2000) that it qualifies as a small entity. *See, Id.* at ¶¶ 45–46; Haberman Tr. 201:8–15, 202:12–19; 206:10–18; 210:14–216; 217:15–218:10.

Lex delegated the responsibility to pay the maintenance fees for the '188 Patent to its patent counsel, Irving Weiner. *See, Id.* at ¶ 40. Weiner, on behalf of Lex, petitioned the PTO to accept "unintentionally delayed payment of maintenance fee" in an effort to reinstate the '188 Patent. *See, Id.* at ¶ 42. In the Petition, Lex took the position that it qualified as a small entity and submitted a Verified Statement signed by Haberman asserting Lex's status as a small entity. *See, Id.* at ¶ 43. In the Petition, Lex did not identify its licensees. *See, Id.* at ¶ 44.

Weiner failed to pay the 12th year maintenance fee for the '188 Patent. *See, Id.* at ¶ 35. On October 5, 1998, Weiner, on behalf of Lex, submitted a second petition to accept "unintentionally delayed payment of maintenance fee" to the PTO. *See, Id.* at ¶ 50. Weiner asserted in the Petition that "[a] verified statement establishing small entity status for this patent was filed November 2, 1993. It is confirmed that the small entity status for this patent has been checked and is still in effect." *See, Id.* at ¶ 51. Lex does not recall having any discussions with Weiner prior to the payment of the 12th year maintenance fee for the '188 Patent, and Weiner and Haberman have never discussed the issue of small entity/large entity status or whether the licensing of the '188 Patent affected whether Lex had an exclusive right in

the '188 Patent. *See, Id.* at ¶ 52. The PTO accepted Lex's second petition to accept "unintentionally delayed payment of maintenance fee" and reinstated the '188 Patent. *See, Id.* at ¶ 53.

Lex has claimed small entity status with regard to all nine of the patents it owns even though Lex and Haberman believe that Microsoft, Sony, Matsushita, Hitachi, Adobe, Macromedia, Avid and Tectronix, all licensees of Lex, employ over 500 people. Haberman Tr. 218:11–21; 230:24–231:25; Exh. 42. As a result, Lex has saved approximately $25,000 in maintenance fees over the past ten years. *See, Id.* at ¶ 54; Hokanson Decl. at ¶ 14.

### D. Procedural History

On July 21, 1998, Plaintiff Ulead filed its Complaint.

On April 7, 1999, Defendant and Counter–Claim Plaintiff Lex filed an Answer and Counter–Claim. In the Counter–Claim, Lex asserts a claim for patent infringement against Ulead.

On April 29, 1999, Plaintiff and Counter–Claim Defendant Ulead filed its Answer to the Counter–Claim.

On April 7, 2000, Defendant and Counter–Claim Plaintiff Lex filed a Motion to Join Ulead–Taiwan and to Continue Discovery Cutoff and Pre–Trial Dates, which was denied without prejudice by this Court.

On June 26, 2000, Lex filed the Renewed Motion to Join Ulead–Taiwan as an Indispensable Party and to Continue Discovery Cutoff and Pre–Trial Dates, which this Court granted on July 18, 2000.

On July 25, 2000, Defendant and Counter–Claim Plaintiff Lex filed a Cross–Claim against Ulead–Taiwan for Patent Infringement with Demand for Jury Trial.

On September 7, 2000, Plaintiff and Counter–Claim Defendant Ulead–California and Cross–Claim Defendant and Counter–Claimant Ulead–Taiwan filed an Answer to Cross–Claim of Lex Computer & Management Corp. and Counter–Claim.

On September 25, 2000 Defendant and Counter–Claim Plaintiff Lex filed an Answer to Ulead–Taiwan's Counter–Claim.

On December 12, 2000, Defendant and Counter–Claim Plaintiff Lex filed a Motion for an Order Granting Leave to File Amended Counter–Claim Against Ulead–California and Amended Cross–Claim Against Ulead–Taiwan, which this Court granted on January 2, 2001.

On December 26 and 28, 2000, Plaintiff and Counter–Defendant Ulead–California and Cross–Defendant and Counter-claimant Ulead–Taiwan filed Plaintiff's Motion No. 1 and 2, respectively, for Notice of Motion and Motion for Summary Judgment of Invalidity of U.S. Patent No. 4,538,188.

On January 2, 2001, Plaintiff and Counter–Defendant Ulead–California and Cross–Defendant and Counter-claimant Ulead–Taiwan (collectively "Ulead") filed Plaintiff's Motion No. 3, Notice of Motion and Motion for Summary Judgment of Non–Infringement of U.S. Patent No. 4,538,188, which will be addressed at a later date.

On January 12, 2001, Plaintiff Ulead filed its Answer of Ulead Systems, Inc.-California to First Amended Counter–Claim by Lex Against Ulead–California for Patent Infringement, Inducing Infringement and Contributory Infringement.

On that same date, Plaintiff Ulead filed its Answer of Ulead Systems, Inc.-Taiwan to First Amended Cross–Claim by Lex for Patent Infringement, Inducing Infringement and Contributory Infringement against Ulead–Taiwan and Counter–Claim.

### I. DISCUSSION

#### A. Standard

#### 1. Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.;* Fed R. Civ. P. 56(e). It may not rely on "mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See, Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *See, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See, Harper v. Wallingford*, 877 F.2d 728 (9th Cir.1989); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

If the moving party seeks summary judgment on a claim or defense on which it bears the burden of proof at trial, it must satisfy its burden by showing affirmative, admissible evidence.

Unauthenticated documents cannot be considered on a motion for summary judgment. *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir.1989).

On a motion for summary judgment, admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. Fed.R.Civ.P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. *Taylor v. List* 880 F.2d 1040, 1045 (9th Cir.1989).

### B. Analysis

#### 1. Uleads'[2] Motion No. 1 for Summary Judgment is Granted.

In this Motion, Ulead seeks Summary Judgment on its respective claims for a judicial declaration that the 188 Patent is unenforceable, invalid and/or expired on the following grounds:

(A) The '188 Patent is unenforceable and/or invalid due to Lex's inequitable conduct, namely its material misrepresentations to the United States Patent and Trademark Office ("PTO"); and,

(B) The '188 Patent expired as of August 27, 1993, because, independent of Lex's inequitable conduct, Lex failed to pay the appropriate maintenance fee required under 35 U.S.C. § 41(b) and (c).

Ulead claims that every owner of a patent is statutorily required to pay three maintenance fees due on the 4th, 8th and 12th year after issuance, in order to maintain the patent in force beyond the three and one-half year period following issuance.[3]

---

2. From this point onwards, when the Court refers to "Ulead," the Court intends to include both Ulead–California and Ulead–Taiwan as both parties have jointly filed the December 26, 2000 Motion No. 1, Motion for Summary Judgment and December 28, 2000

Motion No. 2, Motion for Summary Judgment.

3. Because the '188 Patent issued on August 27, 1985, the 4th year fee was due August 27, 1989, the 8th year fee was due August 27,

Under limited circumstances, a reduced fee may be paid if the patentee qualifies as a "small entity," *i.e.*, when the patentee and any licensee under the patent each have fewer than 500 employees. Because of the critical need for continued funding, the penalty for falsely representing oneself as a "small entity," and paying the reduced fee, is considered to be a fraud on the PTO. Ulead contends that Lex has committed such a fraud.

Specifically, Ulead argues that Lex engaged in the following fraudulent practices. Lex's sole business consists of licensing the patents it owns. Because it already had licensed the '188 Patent to a corporation that had more than 500 employees, Lex did not qualify to pay the "small entity" fee due in the 8th year. By the time it sought to pay its 12th year fees, Lex had licensed its patent to some of the largest corporations in the world. Ulead avers that notwithstanding these facts, Lex has repeatedly and falsely represented to the PTO that it is a small entity and has paid reduced maintenance fees at the 8th and 12th years. Ulead claims that Lex's blatant disregard for patent laws defrauded the PTO of thousands of dollars, and accordingly, Lex's '188 Patent should be held unenforceable and/or invalid.

In addition, independent of Lex's allegedly inequitable conduct, Ulead claims that the '188 Patent expired on August 23, 1993, due to Lex's failure to pay the large entity maintenance fee required under 35 U.S.C. § 41(b) and (c). As a result, Ulead contends that the '188 Patent cannot be enforced against Ulead.

### A. The Joint Motion for Summary Judgment on the Issue of Inequitable Conduct is Granted.

■ The acts of improperly establishing "small entity" status, improperly paying "small entity" fees, and reviving an expired patent on the false claim of being a "small entity," with the intent to deceive the PTO, are considered to be inequitable conduct. 37 C.F.R. § 1.28. "Inequitable conduct includes affirmative misrepresentations of a

1993 and the 12th year fee was due August

material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *See, Perseptive Biosystems*, 225 F.3d at 1318 (*citing Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178–79 (Fed.Cir. 1995)).

■ "Determination of inequitable conduct requires a two-step analysis. First, the trial court must determine whether the withheld [information] meets a threshold level of materiality. The trial court must then also determine whether the evidence shows a threshold level of intent to mislead the PTO." *See, Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed.Cir.1998). "Once the threshold levels of materiality and intent have been established, the trial court is required to weigh materiality and intent ... The more material the omission, the less evidence of intent will be required in order to find inequitable conduct has occurred." *Id.; Perseptive Biosystems*, 225 F.3d at 1319 (*citing N.V. Akzo v. E.I. Dupont de Nemours*, 810 F.2d 1148, 1153 (Fed.Cir.1987)). "[T]he court must then determine whether the [patent owner's] conduct is so culpable that the patent should be held unenforceable." *Id.* The party asserting inequitable conduct is required to prove it by clear and convincing evidence. *See, Orthopedic Equipment Company, Inc. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383 (Fed.Cir.1983).

### 1. There is No Genuine Issue of Whether Lex's Filing of the False Declaration is Material as a Matter of Law.

■ Information is material if there is a " 'substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.' " *See, Baxter*, 149 F.3d at 1327 (*quoting* 37 C.F.R. § 1.56); *see also, Regents of University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1569 (Fed.Cir.1997). The standard for materiality is whether a reasonable examiner

27, 1997.

would consider the omission or misrepresentation important in deciding whether to issue the patent. *See, Fox Industries,* 922 F.2d 801, 803 (Fed.Cir.1990). In *Gen'l Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1411 (Fed.Cir.1994), the court held that, "as a matter of law ... a false statement in a petition ... is material if ... it succeeds in prompting expedited consideration of the application." Here, Ulead contends that the false statements submitted by Mr. Haberman and Lex's registered patent counsel induced the PTO to twice accept the payment of maintenance fees lower than the fees required by law, to twice revive the '188 Patent, and to twice surround an expired patent with the semblance of validity. This Court agrees.

Lex contends that Ulead has not met its initial burden of coming forward with evidence that Lex's claim of "small entity" status was material to the PTO's decision to accept Lex's maintenance fees in 1993 and revive the patent. Similarly, Lex argues that Ulead has not produced any evidence that the PTO would reject a late fee and refuse to reinstate a patent if a patentee underpays its maintenance fee. In sum, Lex avers that, at the very least, there is a genuine issue of fact as to whether Lex's claim of "small entity" status induced the PTO to act or was material to the decision by the PTO to accept Lex's maintenance fees in 1993, and to revive the patent. This Court disagrees.

The materiality of intentional false statements may be independent of the claims of the patent. *See, Gen'l Electro Music Corp. v. Samick Music Corp.,* 19 F.3d 1405, 1411 (Fed.Cir.1994)(finding a false statement that the patentee had conducted a prior art search to be material). In *Rohm & Haas Co. v. Crystal Chem. Co.,* 722 F.2d 1556, 1571 (Fed.Cir.1983), the court held that "there is no room to argue that submission of false affidavits is not material," concerning the issue of prior art.

In *Paragon Podiatry,* the patent applicant filed false affidavits regarding its sales information, that was uniquely in the control of the applicant. 984 F.2d at 1193. The Federal Circuit upheld a summary judgment finding inequitable conduct, holding that the filing of the affidavits "can be particularly egregious because, unlike the applicant's failure to disclose, for example, a material patent reference, the examiner has no way of securing the information on his own." *Id.* In this instance, even if the PTO had a mechanism for testing the identity or size of any of Lex's licensees on its own, it was foreclosed from doing so because Lex concealed the threshold fact that it even had licensees. All of the relevant factual information was uniquely in the possession and control of Lex.

The Manual of Patent Examining Procedure (the "MPEP") § 509.03 at 500–25 and 37 C.F.R. § 1.28 regard any attempt to improperly establish status as a small entity "as a fraud practiced or attempted on the [PTO]." Ulead has established through the evidence presented that a nexus between Lex's alleged misrepresentation and the PTO's decision to issue or revive the patent exists. As such, this Court finds that Lex's representation as a "small entity" is deemed "material," as a matter of law, for purposes of this Motion for Summary Judgment.

**2. There is Circumstantial Evidence that Lex Intended to Deceive the PTO**

The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent. *See, Lipman v. Dickinson,* 174 F.3d 1363, 1370 (Fed.Cir.1999). However, "a finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *See, Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d

804, 808–809 (Fed.Cir.1990)(*citing Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876, 9 U.S.P.Q.2d 1384, 1392 (Fed.Cir.1988)). As the Federal Appeals Circuit held in *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1211–13 (Fed.Cir.1987), the decision respecting inequitable conduct is a discretionary decision to be made by the judge on his or her own factual findings.

The Court must view the involved conduct "'in light of all the evidence' and must then determine whether that conduct in its totality manifests a sufficiently culpable state of mind to warrant a determination that it was inequitable." *See, Id.* In *Consolidated Aluminum*, the Court of Appeals for the Federal Circuit held that the district court properly made that determination "in light of Consolidated's intentional concealment of the [product] and disclosure of a fictitious, inoperable [product]." *Id.*

Courts recognize that it is rare for a witness to admit that his actions were intended to deceive. "Intent need not be proven by direct evidence. Indeed, '[d]irect proof of wrongful intent is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances.'" *See, Paragon Podiatry*, 984 F.2d at 1189–90 (explaining that intent must generally be inferred from the facts and circumstances surrounding the applicant's conduct). "The law is clear that direct evidence of intent is not necessary. Rather, intent is 'most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor.'" 37 C.F.R. § 10.23(b)(4), (c)(2)(ii); *See, Lipman v. Dickinson*, 174 F.3d 1363, 1370 (Fed.Cir.1999)(*quoting Molins*, 48 F.3d at 1180); *Akron Polymer Container Corp. v. Exxel Container, Inc.*, 148 F.3d 1380, 1384 (Fed.Cir.1998)("the facts in inequitable conduct cases rarely, if ever, include direct evidence of admitted deceitful conduct ... The intent element of the offense is thus mainly proven by inferences drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred"). "Thus, circumstantial evidence may permit an inference of intent." *See, Lipman*, 174 F.3d at 1370 (*citing Rohm & Haas Co.*, 722 F.2d at 1571 (intent to deceive inferred from likely result of filing affidavits based on falsified data)). However, prior decisions also make clear that although intent may be inferred from circumstantial evidence, mere gross negligence is insufficient to justify an inference of an intent to deceive the PTO. *See, Baxter*, 149 F.3d at 1329 (*citing Kingsdown*, 863 F.2d at 876); *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n. 9 (Fed.Cir.1987).

In this case, Lex does not dispute that it was a "large entity" when it paid "small entity" maintenance fees in 1993 and 1997. Instead, Lex claims through its declarants that it did not have the requisite intent to deceive in 1993 by claiming that Mr. Haberman was ignorant of the law and his attorney was ignorant of the facts that divested Lex of "small entity" status. Despite his legal background and twice sitting through a PLI Course for the Patent Bar Examination, which he did not pass, Mr. Haberman signed the PTO affidavit for small entity status, which declares on its face that:

> If the rights held by the above identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below ...

*See,* Ulead's Statement of Uncontroverted Facts at ¶ 45. For example, in his deposition testimony on the issue of the "small entity" declaration, Mr. Haberman at first, claimed his excuse for failing to list Lex's licensees was that Lex had not given up any of its "exclusive rights" to the patent as that term is used in the declaration. Later in the deposition he admitted that Lex's licensees had "rights" in the '188 Patent. *See, Id.* at 230:1–22. Thus, his averment that he did not understand the legal implications of the declaration is questionable.

Conversely, Lex's attorney, Mr. Weiner claims that he did not know the facts. Specifically, he claims he was not aware

"until recently that Lex had finalized any license agreements with any companies having more than 500 employees," (First Weiner Decl. at ¶ 7,11) when he knew that Lex was solely in the business of licensing its patents. *See,* Haberman Tr. 189:3–7. Mr. Weiner also provides no explanation as to how he "knew that Lex never had more than 20 employees" but did not know that Lex had licensees. *See,* First Weiner Decl. at ¶ 11. Ulead correctly asserts that either Mr. Weiner did not ask the right questions or he was not provided the right answers. In addition, Lex fails to address Weiner's second representation to the PTO that it was a small entity in Mr. Weiner's 1997 statement that: "It has been confirmed that the small entity status for this patent has been checked and is still in effect." Mr. Weiner provides no explanation for this statement. *See,* First Weiner Decl. at ¶ 10. Mr. Weiner's claims of ignorance of factual matters are suspect, as well.

The *Paragon* court faced a similar situation in which the defendant attempted to separate the knowledge of the inventor from that of the attorney. The court held that "[t]his argument of a Chinese Wall,[4] if legally sufficient at all, lacks evidentiary support." *See, Paragon Podiatry,* 984 F.2d at 1192.

Just as the *Baxter* court did, this Court finds Lex's subsequent declarations to be "self-serving and inconsistent with the documentary evidence." Moreover, "mere denials of intent to mislead may not be sufficient to overcome circumstantial evidence of intent to deceive." *See, LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm.,* 958 F.2d 1066, 1076 (Fed.Cir.1992); *see also, Paragon,* 984 F.2d at 1191 ("If a bare declaration of lack of intent to mislead where a false material affidavit is submitted to the PTO were to raise a genuine issue, summary judgment would be precluded in all cases except where no response at all is made.")

To mitigate evidence of intent to deceive, good faith is only one factor to be considered along with the totality of the evidence. *See, Baxter,* 149 F.3d at 1330. (*citing, Kingsdown,* 863 F.2d at 876 (The involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive)). Here, Mr. Haberman claims that after learning that Lex was not qualified for "small entity" status, he immediately told his attorney to correct the error to the PTO. However, this action was taken well after the start of this litigation, which tends to diminish any suggestion that Lex acted purely out of good faith.

▪ In *Fox Indus., Inc. v. Structural Preservation Systems, Inc.,* 922 F.2d 801, 803 (Fed.Cir.1990), the Federal Court of Appeals held that the cancellation or amendment of a claim "tainted" by inequitable conduct will not excuse the patentee's intentional failure to disclose material references. It is also settled law that inequitable conduct with respect to one claim renders the entire patent unenforceable. *See, Kingsdown,* 863 F.2d at 874. This Court finds ample evidence for inferring Lex's intent to deceive the PTO as the basis for granting Summary Judgment. Accordingly, this Court grants the Motion for Summary Judgment.

**B. This Court Grants the Motion for Summary Judgment Even Though the '188 Patent Appears to Have Been Reinstated as of November 15, 1993, Lex has not Claimed Small Entity Status in Good Faith as a Matter of Law**

▪ There appears to be considerable dispute between the parties as to whether Weiner failed to pay the 8th year maintenance fee for the '188 Patent, and whether as a result, it expired. *See,* Haberman Tr.

---

4. This Court notes that the use of the term "Chinese Wall," quoted from the *Paragon* opinion, is politically incorrect. *See,* Judge Harry Low's concurring opinion in *Peat, Mar-* *wick, Mitchell & Co. v. Superior Ct.,* 200 Cal. App.3d 272, 293–294, 245 Cal.Rptr. 873, 887–888 (1988).

194:22–195:8; Hokanson Decl. Exh. 35 at 164. Ulead has provided evidence of a PTO Report which states that the '188 Patent expired as of October 16, 1998 for "failure to pay [the 8th year] maintenance fees," contrary to Lex's assertions of mere "underpayment." *See,* Hokanson Decl., Exh. 42 at p. 202. However, Lex correctly points out that the PTO reinstated the '188 Patent as of November 15, 1993. Moreover, Lex states that the difference between the small entity maintenance fee amounts paid in 1993 and the large entity maintenance fee amount that should have been paid in 1993 was recently forwarded to the PTO, and the PTO has agreed to accept it. *See,* Second Weiner Decl., Exh. 1. Thus, while Lex's '188 Patent may have been deemed expired in the 8th year as propounded by Ulead, Lex's '188 Patent appears to have been reinstated.

Therefore, the Court will now focus on the issue of whether 37 C.F.R. Section 1.28(c) applies to the instant action. Section 1.28(c) specifically addresses the correction of an erroneous claim of small entity status and erroneous payment of the small entity fee. Section 1.28 permits a patentee to correct the erroneous payment of a small entity fee at any time. *See, D.H. Technology, Inc. v. Synergystex Intern'l, Inc.,* 154 F.3d 1333 (Fed.Cir.1998). Section 1.28 provides:

> If status as a small entity is established in good faith, and fees as a small entity are Paid in good faith, in any application or patent, and it is later discovered that such status as a small entity was established in error or that through error the Office was not notified of a change in status as required by paragraph (b) of this section, the error will be excused upon payment of the deficiency between the amount paid and the amount due.

Accordingly, Lex must demonstrate that it established small entity status in "good faith" in order to avoid expiration of the patent.

Lex primarily asserts that after it recently discovered that it had mistakenly asserted small entity status, Lex's attorney took immediate steps to notify the PTO of the error and pay the deficiency. As previously discussed, Lex only attempted to correct the alleged error after the onset of litigation had begun and only when the threat of invalidating the patent became a reality. By contrast, Ulead has presented sufficient circumstantial evidence to establish, as a matter of law, that between Mr. Haberman's alleged ignorance of the law and Mr. Weiner's purported ignorance of the facts, they were so willfully blind as to preclude a finding of good faith. Even if it could be successfully argued that Ulead has not shown by clear and convincing evidence that Lex committed inequitable conduct, there is sufficient evidence to find that Lex was not acting in good faith [5] as additional grounds.

As such, this Court finds that no genuine issues regarding the issue of good faith exist, and that Lex has demonstrated bad faith, as a matter of law. Accordingly, this Court **grants** Uleads' Joint Motion No. 1 for Summary Judgment and deems, as a matter of law, the '188 Patent invalid, unenforceable and expired.

### III. Conclusion

Based on the foregoing discussion, the Court hereby **GRANTS** Plaintiff Uleads' Joint Motion No. 1 for Summary Judgment of Unenforceability, Invalidity and/or Expiration of U.S. Patent No. 4,538,188.

IT IS SO ORDERED.

---

**5.** Lex's implication that it established "good faith" because the PTO is accepting its late payment is equally unavailing. *See,* Abraham Hershkovitz, "Petitions Practice Writing the PTO on Patent Matter" (December 1, 1997). This article, appropriately cited by Ulead, is authored by the Director, Office of Petitions, for the PTO, and reflects the fact that the PTO simply accepts the payment of late fees without examination. As such, the PTO's acceptance of Lex's late fees, has no precedential effect on this Court.