**VECTRA FITNESS, INC., a Washington corporation, Plaintiff,**

v.

**ICON HEALTH & FITNESS, INC., a Delaware corporation; and Sears Roebuck and Company, a New York corporation Defendants.**

**Icon Health & Fitness, Inc., a Delaware corporation, Counterclaimant,**

v.

**Vectra Fitness, Inc., a Washington corporation, Counterclaim Defendant.**

**No. C02–635R.**

United States District Court, W.D. Washington at Seattle.

Feb. 14, 2003.

Order Denying Reconsideration Feb. 26, 2003.

1112

Paul T Meiklejohn, Dorsey & Whitney LLP, Seattle, for Vectra Fitness Inc, a Washington corporation, plaintiff.

Gillis E Reavis, Stephen Tan, Brown Reavis & Manning PLLC, Seattle, Larry R Laycock, David R Wright, C.J. Veverka, William R Richter, L Rex Sears, Workman Nydegger & Seeley, Salt Lake City, UT, for Icon Health & Fitness Inc, a Washington corporation, Sears Roebuck & Co, a New York corporation, defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LITERAL INFRINGEMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON NONINFRINGEMENT, AND DENYING PLAINTIFF'S MOTION TO COMPEL

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on plaintiff Vectra Fitness Inc.'s ("Vectra") motion for summary judgment of literal infringement of claims 25 and 26 of U.S. Patent No. Re. 34,572 (the "572 patent") by two products, the WeiderPro 9930 and WeiderPro 9940 (the "accused products"), which are manufactured by defendants ICON Health and Fitness, Inc. ("Icon") and Sears, Roebuck and Company ("Sears"). Vectra alleges that the WeiderPro 9930 literally satisfies every recitation of claim 25 and claim 26, and that the WeiderPro 9940 literally satisfies every recitation of claim 26. Defendants have filed a cross motion for summary judgment of non-infringement, contending *inter alia* that the accused products each lack one or more of the "stops" required by both claims 25 and 26. Additionally, defendants argue that Vectra should be equitably estopped from bringing this infringement action. On February 5, 2003, the court conducted a hearing, at which the parties, aided by demonstrative exhibits of the accused products, clarified the issues in dispute.

Having reviewed the documents filed in support of and in opposition to these motions, and having heard the parties' oral arguments, the court finds and rules as follows:

## I. *BACKGROUND*

The '572 patent is directed to exercise machines having multiple exercise stations

yet only a single weight stack. The exercise stations are coupled to the weight stack by a cable and pulley system that enables a user to switch from one exercise station to another exercise station without requiring the user to disconnect and reconnect various cables leading to the various exercise stations. Thus, a single weight stack can be used with multiple exercise stations while requiring no user adjustment of the connection between the weight stack and the exercise station.

Claim 25 of the '572 patent requires four exercise units and further requires:

two floating pulleys coupled together;

a third floating pulley;

a first cable passing over one of said two floating pulleys and connected at one of its ends to said load and connected at its other end to said first exercise unit;

a second cable passing over said third floating pulley and the other of said two floating pulleys, and connected at one of its ends to said second exercise unit and connected at its other end to said third exercise unit;

said fourth exercise unit being operatively associated with said third floating pulley;

stops for said exercise units whereby a manual exercising force applied either to said first cable by use of said first exercise unit, or to said second cable by use of said second or third exercise units, or to said third floating pulley by use of said fourth exercise unit, applies a force to said load and to all of said stops except the stop for the exercise unit in use.

'572 patent at 11:41–63 (attached as Ex. A to Ish Decl.)

Claim 26 is an exercise machine with three exercise units and further requires:

a first floating pulley unit;

a second floating pulley unit;

a first cable receiving said floating pulley units and said load connected to said first exercise unit such that a force exerted on either one of said floating pulley units or on said first exercise unit responsively tensions said first cable and is resisted by said load;

a second cable carried by said first floating pulley unit and connected at one of its ends to said second exercise unit;

a third cable carried by said second floating pulley unit and connected at one of its ends to said third exercise unit; and

stops on said three cables whereby a manual exercising force applied either to said first cable by use of said first exercise unit, or to said second cable by use of said second exercise unit, or to said third cable by use of said second exercise unit, or to said third cable by use of said third exercise unit, responsively tensions said first cable and applies a force tending to move said load.

'572 patent at 11:64–12:19.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

"[S]ummary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988). That is, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B. *Canons of Construction*

■ Determining patent infringement requires that the court determine whether someone (1) without authority (2) makes,

uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent. *Cyrix Corp. v. Intel Corp.*, 77 F.3d 1381 (Fed.Cir. 1996).

▮▮▮ Infringement may be established either literally or under the doctrine of equivalents. "Literal infringement exists if each of the recitations of the asserted claim(s) read on, that is, are found in, the accused device." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed.Cir.1995). Under the doctrine of equivalents, an accused device infringes if it performs substantially the same function, in substantially the same way, to achieve substantially the same result as the patented invention. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Plaintiff contends in it motion that defendants' products literally infringe the '572 patent.[1] Determining whether a patent claim covers the alleged infringer's product or process is a two-step process. *Desper Prods. Inc. v. QSound Labs Inc.*, 157 F.3d 1325, 1332 (Fed.Cir.1998). First, it is necessary to determine, as a matter of law, what the words in the claim mean. *Markman v. Westview Instr. Inc.*, 517 U.S. 370, 374, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Second, after the words of a claim are interpreted, it is necessary to determine, as a matter of fact, if the claim covers the alleged infringer's product or process. *Id.* A claim is literally infringed if each properly construed claim element reads on the accused product or process. *Jeneric/Pentron Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed.Cir.2000). There can be no literal infringement of a claim when even a single limitation recited in the claim is not met by the accused product. *Strattec Sec. Corp. v. Gen. Auto. Specialty Co.*, 126 F.3d 1411, 1418 (Fed.Cir.1997).

▮▮▮ Interpretation of patent claims is "a matter of law reserved entirely for the court." *Markman*, 517 U.S. at 372, 116 S.Ct. 1384. Courts focus on the "intrinsic" evidence—that is, the language of the claims, the patent specification, and the prosecution history. *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 979 (Fed.Cir. 1995). Extrinsic evidence may be considered where there is a clear ambiguity in the patent claim language. *Id.* at 980–81. Acceptable extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises. *Id.*

### C. Construction of Claims

#### 1. The WeiderPro 9930 and Claim 25

With respect to claim 25, it is undisputed that the WeiderPro 9930 satisfies many of the limitations of the claim. For example, defendants concede that the WeiderPro 9930 is "[a]n exercise machine" that includes "a load" and "first, second third and fourth exercise units" as well as "two floating pulleys coupled together" and a "third floating pulley."

There are, however, three areas of dispute with respect to the WeiderPro 9930 and claim 25:(1) whether the WeiderPro 9930 has "stops" within the meaning of the claim; (2) whether a "manual exercising force . . . applies a force to said load and to all of said stops except the stop for the exercise unit in use"; and (3) whether the accused product's first and second cables "pass over" the two floating pulleys. The court will address each in turn.

---

1. Plaintiffs, in response to defendants' cross-motion for summary judgment on noninfringement, argue that, if defendants have not "literally" infringed the '572 patent, the products infringe the patent under the doctrine of equivalents. But that issue is not before the court at this time.

#### a. "Stops for said exercise units"

Claim 25 of the '572 patent requires a "stop" associated with each of the four recited exercise units. Both parties acknowledge that the '572 patent recognizes that "ball"-type structures that abut the adjacent structure to allow the cable to be tensioned are "stops." The '572 patent states, for example, that "the cable component 40 and cables 18, 19, 20 and 41 have ball-like stops fittings ... respectively mounted thereon to restrict retraction thereof." '572 patent 3:14–16. The stops for the first and second exercise units of the WeiderPro 9930 are "ball"-type stops, and defendants do not dispute that these stops fall within the relevant language of claim 25. The issue, rather, is whether the "mechanical" structures for the leg press unit (the third exercise unit) and for the butterfly exercise unit (the fourth exercise unit) constitute stops within the meaning of claim 25.

Defendants argue that these so-called "mechanical" stops do not satisfy the patent's stops limitation because the accused structures are part of their respective exercise units, and, in defendants' view, the specification teaches that where retraction of the cable is prevented by direct abutment of the exercise unit with another structure, no stop is present. Defendants' proposed limitation is that a stop must be "between the connection to the exercise unit and the adjacent structure." The court disagrees with this reading of the stops limitations in claim 25.

■ There is ample evidence in the patent showing that structures that "function as stops" constitute "stops." For example, the '572 patent states that "[t]he function of stop 16a can be performed by having the handle 80 rest directly on the pedestal 49." '572 patent at 6:21–23. Thus, referring to figure 5 of the '572 patent, if the ball-like stop 16a is eliminated and the cable 40 is tensioned, the handle 80 would contact the top surface 49a of the pedestal 49. While the handle 80 is not "between the connection to the exercise unit and the abutting structure," it clearly performs as a stop. Another example can be found in Figure 6 of the patent, in which "[p]ivoted at an upper end to the back of the seat 63 is a link 65 which has its lower end bent at right angles to the rest of the link to provide a stop 65a for cooperating with the underside of a U-shaped bracket 66." *Id.* at 4:52–55. These portions of the '572 patent show that the term "stop," as used in claim 25, encompasses "mechanical"-type structures that are associated with the exercise units that abut an adjacent structure when a cable is pulled to stop the movement of the cable end and to allow the cable to be tensioned.

Defendants insist that, although the mechanical structures such as a handle can serve the function of a stop, the handle is not a stop. There is a difference, defendants contend, between "stops" versus "means for stopping." This argument is foreclosed by the above passages in the patent, which passages demonstrate that both "mechanical" structures, such as a handles or rubber bumpers, can act as stops for an exercise unit. That these structures "function as stops" means they are "stops." As for defendants' argument that stops must be attached to the cable between the connection of the cable to the exercise unit and the abutting structure, there is nothing in the '572 patent that suggests that "stop" is narrowly limited to being "between the connection to the exercise unit and the abutting structure."

■ Having thus construed the term "stops," it is clear that the WeiderPro 9930 includes "ball"-type stops for the first and second exercise units and "mechanical" stops for the third and fourth exercise

units. In other words, this recitation of claim 25 is found on the accused device.

### b. *"Force to all Stops"*

Claim 25 requires that a "manual exercising force" applied to the cable associated with the exercise unit in use "applies a force . . . to all of said stops *except the stop for the exercise unit in use.*" '572 patent at 11:57–63. The parties are seemingly in agreement as to the proper construction of this limitation. Simply put, it means a manual exercising force applied to the first, second, third, or fourth exercise units applies a force to the load and to all of the stops except for the stop associated with the exercise unit in use.

■ The issue with respect to this recitation is whether it reads on the Weider-Pro 9930. Defendants argue that it does not. According to defendants, a manual force applied by the butterfly exercise unit of the WeiderPro 9930 applies a force to *all* stops, including the stop associated with the butterfly exercise unit. This argument, when viewed in light of the structure of the WeiderPro 9930, is unavailing. A manual exercising force applied at the butterfly station unquestionably "applies a force to said load and to all of said stops except for the stop for the exercise unit in use." Put another way, when the butterfly unit is in use, there is no force applied to . the stop associated with that unit. This limitation, therefore, reads on the accused product.

### c. *"First Cable Passing Over"*

■ Finally, claim ·25 also requires "a first cable passing over one of said two floating pulleys and connected at one of its ends to said load." '572 Patent at 11:46–47. This claim construction issue merits only brief mention. Defendants argue that a cable "passing over" a pulley must be construed within a specific reference frame—that is, that the pulley must be between the cable and the floor. This idiosyncratic interpretation is clearly erroneous and defies common-sense usage of the term "passing over" in this context. When the cable "passes over" the pulleys, the cable does just that—it runs through the pulleys. Whether the cable is "under" or "over" the pulley from an earth-centered perspective is determined by the direction of the pulley. Pulleys, by virtue of their function, have a certain direction; if the cables are pointed upward, the tension is going up, and the cable is "over" the pulley even if, from an earth-centered perspective, the cable is "under" the pulley. In other words, the cable is "over" the pulley relative to whether the tension is going upward or downward.

Having thus construed the claim, there is no question that this limitation reads on the accused product. The WeiderPro 9930 includes first and second cables that "pass over" their respective floating pulleys.

### 2. *The WeiderPro 9930 and 9940 and Claim 26*

Plaintiff also contends that the Weider-Pro 9930 and 9940 literally infringe claim 26 of the '572 patent. The two terms requiring construction with respect to claim 26 are as follows: (1) the meaning of "receiving" in the limitation "a first cable receiving said floating pulley units and said load . . ."; and (2) whether the mechanical structures associated with the accused products' butterfly and leg press unit satisfy the "stops" limitation, which requires that the stops be "on" the three cables associated with the exercise units.

### a. *"Receiving floating pulley units"*

■ Claim 26 requires first and second floating pulley units, and "a first cable receiving said floating pulley units." According to Vectra, the meaning of the term

"a first cable receiving said floating pulley units" is functionally defined in the remainder of the claim as meaning that the first cable and the floating pulley units are associated such that "a force exerted on either one of said floating pulley units or on said first exercise unit responsively tensions said first cable and is resisted by said load." '572 patent 12:3–6. Vectra contends that "receiving" means "associated" and does not, as defendants contend, require the first cable to have direct physical contact with the two floating pulley units. According to defendants, "first cable receiving said pulley units" requires that the cable pass over, under, around or part way around at least one pulley of each of the pulley units.

Once again, defendants' strained interpretation—in this instance, of the term "receiving"—is unsupported by the language in the claim. Elsewhere in claim 26, more restrictive terms are used to characterize the relationship between cables and pulleys. For example, claim 26 recites "a second cable carried by said first floating pulley unit" and also "a third cable carried by said second floating pulley unit." '572 patent 12:7–10. Clearly, then, more restrictive terms are used when intended to express a particular physical relationship between a cable and a pulley. *Cf., e.g.,* '572 patent at 7:10, 7:68–8:1, 12:54:61 (using the terms "passing over, "passing under," "passing party way around" or "looping part-way around" to express the relationship between the cable and the pulley).

Thus, the term "first cable receiving said floating pulley units" does not require that both floating pulley units be in direct physical contact with the first cable. Instead, if a force exerted on either one of the floating pulley units responsively tensions the first cable and is resisted by the load,

then the floating pulley units are "received" by the cable as recited in claim 26.

Applying this construction to the accused products, it is evident that the accused products include a "first cable receiving said floating pulley units and said load and connected to said first exercise unit such that a force exerted on either one of said floating pulley units or on said first exercise unit responsively tensions said first cable and is resisted by said load." *See* Ish Decl., ¶ 20, Ex. B and D.

b. *"Stops on the cable"*

 Claim 26 recites in relevant part "stops on said three cables whereby a manual exercising force applied [to one of the cables associated with the exercise unit in use] responsively tensions said first cable and applies a force tending to move said load." '572 patent 11:64–12:19.

The court has already construed the term "stops" to include both "ball" and "mechanical" type structures. Defendants argue, however, that the stops on the accused products' butterfly units fail to satisfy the limitation that the stops be directly "on" on the cable. Plaintiff disagrees that the limitation requires the stop to be directly "on" the cable.

Since the term "on" is not further defined in the claim itself, the court looks to extrinsic evidence for guidance. Webster's defines "on" to mean "so as to be attached to or unified with." Webster's Encyclopedic Unabridged Dictionary 1005 (1989). Using this definition, the stops associated with the butterfly units are "on the cable." While the stops do not come into *direct* contact with the cable, the cable is "attached to" or "unified with" the mechanical structure that functions as the units' stop.

Accordingly, the stops on the WeiderPro 9930 and 9940 satisfy claim 26's stops limi-

tation and therefore literally infringe claim 26.

## C. Remaining Issues

### 1. Equitable Estoppel

■ In its cross-motion for summary judgment, defendants argue that Vectra should be estopped from asserting its infringement claims because of its conduct between 1995 and 2001. Vectra first alleged infringement of the '572 patent by defendants in a letter to Sears in January 1995. Icon, who manufactured the accused product (which was a different model than the products now at issue) responded in February 1995, arguing that its product does not infringe the '572 patent because it does not satisfy the "stops" limitation of claim 25. According to defendants, Vectra, after receiving the communication relating to the "stops" limitation, did not communicate with defendants again until it sent Icon a letter in October 2001 suggesting that the WeiderPro 9930 infringes claim 25 of the '572 patent. Having not heard from Vectra between 1995 and 2001, Icon claims to have inferred that Vectra agreed with its analysis and determined not to assert an infringement claim against devices employing the "stops." Icon states that, had it been aware that Vectra disagreed with its assessment of whether the accused structures constitute "stops," it would have modified its designs to clearly avoid infringement and would not have invested in manufacturing and advertising its present models.

In response, Vectra argues that it has not engaged in misleading conduct, that Icon has not established reliance on Vectra's conduct, and that Icon has failed to establish a nexus between its alleged investment and any delay in filing suit. Vectra further argues that Icon's allegedly infringing product is more clearly infring-

ing than the product that was the subject of the 1995 correspondence.

Defendants' equitable estoppel affirmative defense raises factual disputes that are inappropriately resolved on summary judgment. The court, therefore, denies defendants' motion on this issue.

### 2. Rule 56(f) request for Additional Discovery

Defendants ask the court to deny or continue plaintiff's motion for partial summary judgment on literal infringement, stating that they have been unable to secure a declaration from its expert within in the time of filing its opposition brief.

A continuance under Federal Rule of Civil Procedure 56(f) is not warranted here. The only issue the court has considered is whether the accused products literally infringe the '572 patent. No expert testimony is required to construe the claims limitations at issue in this case. Thus, there is no reason for the court to delay ruling on the merits of plaintiff's summary judgment motion.

### 3. Motion to Compel

Finally, plaintiff has filed a motion to compel, requesting that the court order defendants to produce a Federal Rule of Civil Procedure 30(b)(6) witness within 10 days of the court's Order and to pay plaintiff's fees in filing and prosecuting the motion. Plaintiffs state that a notice of deposition was served on Icon on December 9, 2002, which was 45 days before the deposition was to occur. According to plaintiff, on January 21, 2003, only two days before the deposition, plaintiff's counsel was informed that the deposition was not going to take place.

Defendants respond by arguing that plaintiff's motion is improper since plaintiff did not, as required by Local Rule 37(a)(2), contact defendants to make a good faith

**1120**

effort to resolve this dispute. Defendants further state that it "is and remains willing to produce an appropriate 30(b)(6) witness in this case at a mutually agreeable time and place." Resp. at 2.

Inasmuch as defendants have expressed their willingness to timely produce a Rule 30(b)(6) witness, the court declines to grant plaintiff's motion to compel. The court is mindful of the delay in completing this deposition and therefore expects the deposition to take place without delay.

### III. *CONCLUSION*

For the foregoing reasons, the court finds that the WeiderPro 9930 literally infringes claims 25 and 26 of the '572 patent and the WeiderPro 9940 literally infringes claim 26.[2] Accordingly, plaintiff's motion for partial summary judgment on the issue of literal infringement [doc. no. 24–1] is GRANTED. Defendants' cross-motion for summary judgment on noninfringement [doc. no. 27–2] is DENIED. As set forth above, plaintiff's motion to compel [doc. no. 46–1 is GRANTED in part and DENIED in part.

IN CHAMBERS PROCEEDINGS:

Before the court is defendants' motion for reconsideration of the court's February 14, 2003 Order granting plaintiff's motion for partial summary judgment and denying defendants' motion for summary judgment.

In the motion, defendants argue that the court committed manifest error as to at least three issues. Among those issues are whether force is applied to the stops associated with the WeiderPro 9930's butterfly exercise unit when that unit is in use, whether the term "receiving" in claim 26 requires direct physical contact with the first cable, and whether the term "on the

cable" in claim in claim 26 requires that the stops be directly on the cable.

These issues were fully considered in the court's February 14, 2003 Order. Nothing in defendants' instant motion persuades the court that its previous rulings are in error. The motion [doc. 58–1] is, therefore, DENIED.

---

**2.** Having so concluded, the court need not address plaintiff's arguments regarding the doctrine of equivalents.